JACOB MORRIS, Respondent, *v.* THE NEW YORK CENTRAL
AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Court of Appeals, October 4, 1887.*

Reversing same case, 36 Hun, 647, Mem.

1. *Negligence. Parcels in rack.*—A railroad company, in looking out for
dangers arising from the placing of packages in the car-rack by
passengers, is not to be held to the exercise of the highest care
which human vigilance can give; reasonable care, to be measured
by the circumstances surrounding each case is all that is de-
manded.

2. *Same.*—Where there is nothing extraordinary about the parcel or
its position in the rack, and nothing to attract particular attention
to it, the failure of the train hands to notice it, or, if noticed, to
order its removal, is not negligence.

Action brought to recover damages alleged to have been
sustained by plaintiff when a passenger upon defendant's
road, in consequence of the falling upon him of a clothes
wringer which had been placed by another passenger in a
rack over plaintiff's seat.

Appeal from a judgment of the general term of the supreme
court, affirming a judgment, and an order denying a new
trial.

*Matthew Hale*, for appellant.

*Andrew Hamilton*, for respondent.

PECKHAM, J.—The learned judge in submitting this case
to the jury, instructed them that there was no evidence
upon which they could find that the car or the rack therein
was insufficient, and that there was no negligence upon the
part of the defendant in receiving the clothes wringer in the
car, nor was there evidence that any employee of defendant

33

saw the wringer put in the rack or knew of its being so put in, and that the defendants were not guilty of negligence in permitting the wringer to be put in the rack. In this, we think he was entirely right. He, however, did submit one question for the determination of the jury, and in the following language : "The wringer which has been described to you was in this rack. Was it an article which was in secure to be so placed, and was it calculated to endanger the safety of the passenger who took his seat in the vicinity of this wringer ? The second question, and perhaps the one which is the more important, is whether the wringer was so wrapped and enveloped as to conceal the real character of the wringer from the ordinary careful inspection of the employee of the railroad. The railroad corporation, as I regard the law, would not be liable even although an article not strictly baggage should be placed in one of these receptacles, provided the corporation had no notice of the character of the objectionable article, and providing also that there was nothing in the appearance of the parcel to indicate, upon proper inspection by the employees, the character of the article concealed in the package. Was it so bound and so enveloped as that the employee, in the fair and honest discharge of his duties, exercising a degree of vigilance which he ought under the circumstances in your judgment to have exercised, and was it so exposed that by passing through in the discharge of his duties there he should have observed what it was or not? It is a simple question for you to determine upon this branch of the case, whether this wringer was so enveloped as not to be obvious and discernible to the employees of the road in the honest and faithful discharge of their duty on that occasion which the law required at their hands. If it was obvious, they should have observed it ; if it was not, then there was nothing which gave to them constructive notice of the existence in that wrapper of an article which was dangerous and which they were bound to remove."

We think there was not sufficient evidence to warrant the submission of the question of defendant's negligence to the jury. It is undisputed that the parcel was to some extent wrapped up in paper, and even if only covered in the manner described by the plaintiff, its apparent character, both as to bulk and weight, was not such as reasonably to call the attention of the train hands to it, or, if noticed by them, it was not so apparently placed in a dangerous position as to demand from them an order for its removal from the rack.

In looking out for dangers arising from causes such as this, we do not think that carriers of passengers are to be held to the exercise of the highest care which human vigilance can give. That measure of care has been spoken of as due from them in the actual transportation of the passenger, and in regard to the results naturally to be apprehended from a failure to furnish safe road-beds, proper machinery, perfect cars or coaches, and things of that nature. But in regard to a danger of this kind a carrier of passengers is, we think, held to a less strict measure of vigilance. Reasonable care (to be measured by the circumstances surrounding each case) to prevent accidents of this nature is all that is demanded, and we do not think there was evidence in this case of any such lack of care on the part of the officers of the train.

From the evidence it seems to be quite clear that there was nothing extraordinary about the parcel or its position in the rack, and nothing to attract particular attention to it, and so the failure of the train hands to notice it, or, if noticed, to order its removal, was not negligence.

We think the motion for a nonsuit on this ground should have been granted, and for this reason the judgment should be reversed and a new trial ordered, costs to abide event.

All concur except DANFORTH, J., dissenting, and RAPALLO, J., absent.