to by a board of directors a majority of whom were beneficiaries under its provisions. The referee held with them on this point, also holding that the election of the receivers to avoid the contract was equivalent to an election by the corporation to the same effect, and he therefore reported in favor of a dismissal of the claim for the balance remaining unpaid.

There would be no difficulty in sustaining the judgment against the claimants, entered upon his report, if this election to avoid the contract had been made before it had been fully performed on the part of the firm of Case, Gadd & Case. Independently of any question of fraud, there is no doubt that the contract was voidable at any time before it had been fully executed by the claimants at the instance of the corporation or its stockholders. Barr v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263, 274, 26 N. E. 145. But in the case of a contract merely voidable, and not void ab initio, the rights of the party seeking to enforce it are unimpaired up to the time of disaffirmance; and that party cannot be deprived of any money payable to him thereunder, actually earned pursuant to the terms of the contract, prior to the date when it is disaffirmed. If, therefore, the learned referee was right in regarding the amended contract in this case as simply voidable (and I do not see how he could go any farther under the issues as they were presented for his determination), the claimants were entitled to enforce their demand, in the absence of any allegation or finding of fraud. A different question would arise if the receivers had assailed the amended contract as actually fraudulent in character. It is difficult to discover any consideration for the remarkable increase which it made in the compensation payable to the claimants, but this might have been explained, and they might have been able to show that the arrangement was really beneficial to the association, if that issue had been litigated. Upon this record, however, we can only reverse the judgment of dismissal and direct a new trial of the claim.

Judgment, so far as appealed from, reversed, and new trial of the appellants' claim ordered before a new referee to be appointed at Special Term. All concur.

---

(97 App. Div. 11.)

### WHITING v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. CARRIERS—INJURIES TO PASSENGERS—CARE REQUIRED.

A carrier of passengers is only bound to use reasonable care and diligence to prevent passengers from being injured by articles falling from racks in the cars intended to hold the same.

2. SAME—FALLING OBJECTS—NEGLIGENCE—EVIDENCE.

Plaintiff, a passenger on a fast railroad train, was injured by a valise falling from the rack over her head. The valise, though large, had been lifted into its place by one of plaintiff's companions, to whom it belonged, two hours before. There was no evidence that it was not securely placed in the first instance, or that at any time before it fell there was anything in its position to indicate that it was likely to fall, the fall being occasioned by a change of the center of gravity by the ordinary swaying motion of the train. Held, that such facts were insufficient to establish negligence on the part of the railway company in failing to see that it was properly secured.

Appeal from Trial Term, Kings County.

Action by Eunie L. Whiting against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, made on the minutes of the court, it appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Robert A. Kutschbock, for appellant.
John E. O'Brien, for respondent.

HIRSCHBERG, P. J. The plaintiff has recovered a judgment for injuries sustained from the fall upon her of a telescope satchel from a rack on the side of the car, while she was a passenger on the fast train known as the "Empire State Express," on June 29, 1900. The allegation of negligence in the complaint is as follows:

"That at the time the plaintiff was received as a passenger aforesaid upon the train of the defendants, the said defendants were negligent and careless in the management and operation of the said train, in that they permitted and allowed a certain large satchel to be placed in the rack along the side of said car near the top in an unsafe and dangerous position, while said train was being moved at great speed, and said car was being violently swayed and agitated."

The evidence produced upon the trial failed to establish the negligence thus alleged, and the plaintiff's recovery, therefore, cannot be sustained.

On the day named the plaintiff was journeying from the city of New York to Utica in company with her roommate, Miss Grace Mason, and two Misses Crafts. The satchel was a large one, belonging to Miss Mason, was completely filled, and was carried to the car by her, and by her placed in the rack in the plaintiff's presence. The plaintiff saw her place it in the rack, and noticed that it projected over the edge what she first said was "a few" inches, but finally thought as much as six or seven inches. The appearance of the satchel, as placed in the rack, did not seem to suggest danger to the plaintiff, who sat at the commencement of the journey in the seat directly behind it, over which the rack projected. Miss Mason sat next the window in the seat in front of the plaintiff, with one of the Misses Crafts by her side, and after riding about two hours the plaintiff changed seats with this Miss Crafts, and rode with her roommate until the accident occurred. About half an hour after she changed seats, the satchel fell upon her head. There was no evidence tending to indicate that the satchel was not securely placed in the first instance, or that at any time before it fell there was anything in its position to indicate that it was likely to fall. The fall was not occasioned by any sudden or unusual motion of the car. The plaintiff testified: "That car was swaying all the way up the river, the same as a fast train always does. It was a very fast train." Her witness Miss Cornelia E. Crafts testified, in answer to questions by the court: "There was nothing that took place immediately before the fall of this satchel that attracted my attention. Q. Did you notice any special swaying of the car immediately before, sufficient to attract your attention? A. The car swayed all the time, as a fast train does, but not

more than that." The plaintiff testified that at the time she was struck by the satchel she was stunned by the sensation of being in a collision, and supposed that a collision had occurred, but insisted that nothing beyond violent swaying was noticeable to her in the movement of the car at the time or just preceding it. The necessary inference from the evidence is that the satchel was properly placed in the rack at the start, and that the ordinary and usual motion of a fast train in the course of 2½ hours had gradually moved it until the center of gravity projected beyond the edge of the rack. I cannot see how this fact in itself, without some evidence of a situation calculated to excite apprehension existing for an appreciable period before the accident, justifies a charge of negligence on the part of the conductor or the trainmen. There was no evidence that any of them saw the satchel at all; still less that a sight of it at any time before the moment that it fell would have suggested danger. The rack was there for the purpose of receiving just such baggage. There was nothing unusual in the satchel beyond the fact that it was large and heavy, but not so large and heavy that it could not be carried by a woman, and lifted by her, unaided, into a high rack. The plaintiff testified: "I saw her put this satchel up in the rack. She did it alone. I did not help her." There being nothing extraordinary about either the satchel itself or its position in the rack to hold the defendant liable for negligence on mere proof that at some time in the course of a long journey, while the train was in ordinary motion, the balance became disturbed, so that the satchel was caused to fall, would be to hold the defendant liable as an insurer. The learned trial justice submitted the case to the jury upon the theory that only ordinary care was required of the defendant, but, as was said in the case of Morris v. The New York Central & Hudson River Railroad Co., 106 N. Y. 678, 679, 13 N. E. 455, where a clothes wringer fell upon a passenger:

"We think there was not sufficient evidence to warrant the submission of the question of defendant's negligence to the jury. It is undisputed that the parcel was, to some extent, wrapped up in paper; and, even if only covered in the manner described by the plaintiff, its apparent character, both as to bulk and weight, was not such as reasonably to call the attention of the train hands to it, or, if noticed by them, it was not so apparently placed in a dangerous position as to demand from them an order for its removal from the rack. In looking out for dangers arising from causes such as this, we do not think that carriers of passengers are to be held to the exercise of the highest care which human vigilance can give. That measure of care has been spoken of as due from them in the actual transportation of the passenger, and in regard to the results naturally to be apprehended from a failure to furnish safe road beds, proper machinery, perfect cars or coaches, and things of that nature. But in regard to a danger of this kind a carrier of passengers is, we think, held to a less strict measure of vigilance. Reasonable care (to be measured by the circumstances surrounding each case) to prevent accidents of this nature is all that is demanded, and we do not think there was evidence in this case of any such lack of care on the part of the officers of the train."

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.