### DANIEL W. STEVENS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 25, 1908. — September 4, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence,* Street railway. *Practice, Civil,* Exceptions. *Witness. Evidence,* Relevancy.

At the argument in this court of an exception by the plaintiff to a ruling of the pre-
siding judge directing a verdict for the defendant at the trial of an action against
a street railway company to recover for personal injuries alleged to have been re-
ceived by the plaintiff from his being thrown from a car of the defendant by its
sudden starting as he was standing on the step about to alight, while the car was
moving slowly, at a place which was not a regular stopping place for the defend-
ant's cars, the plaintiff contended that he had been invited by the defendant to
prepare to alight before he reached the regular stopping place, and that the defend-
ant had waived the rule, implied from the establishing of stopping places, that
passengers were to alight at stopping places only.   The plaintiff had made no re-
quests for rulings at the close of the evidence at the trial, and the presiding judge

had directed a verdict for the defendant. The only evidence appearing in the bill of exceptions to support the contentions of the plaintiff in this court was testimony of the plaintiff " that he thought the car was coming to a stop on the [side of the street before the stopping place], and, if it was to let passengers off, he would get off there, the same as they do in hundreds of places at every hour of the day," and evidence that the plaintiff had arisen from his seat and proceeded to the step from which he was thrown because the car had lessened its speed just before reaching a point where the track was intersected by another track from a cross street. *Held,* that the bill showed no error made by the trial judge, since it did not sufficiently appear from the bill that the plaintiff had tried his case upon the contention that the defendant had waived the rule as to stopping places, and, without such waiver, there was no evidence of the invitation upon which he relied.

At the trial of an action against a street railway company to recover for personal injuries alleged to have been received by the plaintiff from his being thrown from a car of the defendant by its sudden starting as he was standing on the step about to alight, while the car was moving slowly, at a place which was not a regular stopping place for the defendant's cars, the plaintiff contended that the defendant, by lessening the speed of the car, waived the rule, implied from the establishment of regular stopping places, that passengers should alight at such stopping places only ; and a witness for the plaintiff was asked " What, if anything, do you know with regard to the practice of cars stopping [where the plaintiff attempted to alight] for the purpose of letting off passengers ? " He answered, " I have on more than one occasion left the car there when the car has been stopped." *Held,* that the answer, not being responsive to the question, must be taken to have been intended to stand by itself, and that it did not amount to a statement that cars were stopped at the place mentioned for the purpose of letting off passengers.

At the trial of an action against a street railway company to recover for personal injuries alleged to have been received by the plaintiff from his being thrown from a car of the defendant by its sudden and negligent starting as he was on the step about to alight, it appeared that the car was approaching a point where the track was intersected by another track from a cross street, and had lessened its speed, and the plaintiff testified that the car started up with such " terrific " force that, holding on to the handle beside the step, he was swung around against the body of the car, and a witness for the plaintiff testified that, when the plaintiff got upon the lower step, " almost immediately the car shot across the street," dragging the plaintiff three or four feet before his hold was broken. The car stopped at its regular stopping place one hundred and twenty feet from where the plaintiff was thrown. *Held,* that there was no evidence which would warrant a finding that the car was started up negligently.

At the trial of an action against a street railway company to recover for personal injuries alleged to have been received by the plaintiff from his being thrown from a street car of the defendant as he was about to alight, at a place which was not a regular stopping place, the presiding judge excluded the following question asked of a witness other than the plaintiff: " At the time when the plaintiff stepped from the platform down on to the step and was on the step, what do you say with regard to where you expected the car was going to make the stop ? " *Held,* that the exclusion was proper, since it was irrelevant what inference the witness might draw from the facts before his mind.

TORT for personal injuries alleged to have been received by the plaintiff by the negligent starting of an electric street car of

the defendant when he was in the act of alighting therefrom. Writ in the Superior Court for the county of Suffolk dated July 6, 1905.

There was a trial before *Lawton*, J.   At the close of the evidence, which was stated in the opinion, the presiding judge directed a verdict for the defendant, and the plaintiff excepted. The plaintiff made no requests for rulings at the trial.

*J. S. Farlow*, for the plaintiff.

*H. J. Hart*, for the defendant.

LORING, J.   The plaintiff, a man seventy-one years of age, was a passenger on one of the defendant's closed cars going east over Boylston Street in Boston about 10.55 P. M. on April 2, 1905.  After passing Exeter Street he signalled the conductor to stop at Dartmouth Street.   The white post indicating the stopping place for Dartmouth Street is east of the crossing, and the plaintiff knew that a track runs north and south on Dartmouth Street in front of the Public Library, and joins the track here in question to the west of the crossing at Dartmouth and Boylston Streets, the switch for the Dartmouth Street track being near the place where the accident happened.   As the car approached the crossing, but while it was some way off, the plaintiff, together with a young man and one Gray, left their seats and went out on to the back platform of the car.   The young man got off while the car was in motion.   After this young man got off the plaintiff got down on to the step, when "the car started with such terrific force — I had my hand on the handle on the body of the car — it swung me around against the body of the car and I fell," to quote the plaintiff's own words.   The plaintiff also testified that "he thought the car was coming to a stop on the Library side, and if it was to let passengers off, he would get off there, the same as they do in hundreds of places, at every hour in the day, and he thought that if he could get off he would get off on that track, on the southerly side of the street, because it would be a hundred feet nearer where he wanted to go."   He testified further "that he did not see any one else on the car who was thrown at all; that the seats of the car were not entirely filled prior to the accident."

The only other witness called by the plaintiff was Gray, already spoken of.   He testified: "That the car had begun to slow down when the young man took his place upon the step;

that when he dropped off [the] car wheels were barely revolving; Mr. Stevens then took the step, and almost immediately the car shot across the street." Gray also testified "that the plaintiff was dragged probably three feet or so by the car before his hold was broken." The car came to a stop at the regular stopping place for Dartmouth Street, about one hundred and twenty feet east of the place where the accident happened.

The plaintiff has contended that he was invited to prepare to alight on the west side of Dartmouth Street. He relies in this connection on his testimony "that he thought the car was coming to a stop on the Library side, and if it was to let passengers off he would get off there, the same as they do in hundreds of places, at every hour in the day." His contention is that this was evidence that the defendant had waived the rule (implied from establishing stopping places) that passengers were to alight at stopping places only; and that under those circumstances slowing up as this car did was an invitation to get ready to alight on the wrong side of Dartmouth Street. Unless the defendant had waived the rule that passengers were to alight at the white posts and at the white posts only, slowing up to run over a switch and cross-over and to cross a street is not an invitation to alight. As to the contention that there was evidence of such a waiver, it is enough to say that we are of opinion that this sentence of doubtful meaning, standing alone, is not sufficient to show that the plaintiff tried his case on that ground in the court below, and there is nothing else in the bill of exceptions to indicate that he did so. The burden is on the excepting party to show that an error was made. *Zamore* v. *Boston Elevated Railway*, 198 Mass. 594. The plaintiff is not aided in this connection by Gray's testimony that he repeatedly had left cars on that side of Dartmouth Street "when the car has been stopped." That means nothing more than that when the car has been stopped, not to let passengers off but for some other reason, he had taken advantage of the situation to get off at a place where he' was not invited to get off. That this is all Gray meant to testify to is plain from the question put and the answer given. His answer was not responsive to the question put and must be taken to have been intended to stand by itself.

"Q. What, if anything, do you know with regard to the prac-

tice of cars stopping on the further side, or the out-of-town side of Dartmouth and Boylston Streets, for the purpose of letting off passengers ?   A. I have repeatedly left the cars myself there. . . . I have on more than one occasion left the car at the place you mention when the car has been stopped."

The question in the case at bar therefore comes to this : Did the evidence of the plaintiff go far enough to prove that the motorman was negligent in the way in which he started the car after it had been properly slowed down to go over the Dartmouth Street switch and to cross Dartmouth Street within the rule laid down in *McGann* v. *Boston Elevated Railway, ante,* 446, and cases there cited.

The car came to its usual stopping place, one hundred and twenty feet from the place of the accident.   No one else on the car was shown to have been thrown about by the starting of the car.   Gray testified that almost immediately the car shot across the street, and that the plaintiff was dragged three feet or more before his hold was broken.   The plaintiff testified that the car started with such terrific force that he was swung round against the body of the car, and that at the time he had his hand on the handle on the body of the car.   That is all.

The plaintiff's testimony that the car started with such terrific force as to swing the plaintiff round on to the body of the car does not go far enough.   How great that force was the jury had no means of knowing.   The plaintiff expected to get off on the wrong side of the street, and for that reason he apparently was not prepared for the ordinary jolt which accompanies the ordinary starting forward of an electric car.   This does not go far enough to prove that the start here in question was a negligent rather than an ordinary one.   Gray's testimony does not carry the evidence much, if any, farther.   All that he testified to was that the car "shot forward."   When these descriptions of the start are taken in connection with the conceded facts in the case, we are of opinion that the plaintiff's evidence did not warrant a finding that the defendant's motorman was negligent in the way he started the car.   See in this connection *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332; *Jameson* v. *Boston Elevated Railway,* 193 Mass. 560; *Weinschenk* v. *New York, New Haven, & Hartford Railroad,* 190 Mass. 250; *Timms* v. *Old Colony*

*Street Railway*, 183 Mass. 193; *Byron* v. *Lynn & Boston Railroad*, 177 Mass. 303. The evidence referred to by the court in *McDonough* v. *Boston Elevated Railway*, 191 Mass. 509, went further than that in the case at bar.

The judge was right in excluding this question to the witness Gray : " At the time when Mr. Stevens stepped from the platform down on the step and was on the step, what do you say with regard to where you expected the car was going to make the stop ? " In no event was it of any consequence what inference was drawn by the witness from the facts before his mind.

*Exceptions overruled.*