CASE 78.—ACTION BY MARY ADAMS AGAINST THE LOUIS‑
VILLE & NASHVILLE RAILROAD COMPANY FOR
DAMAGES FOR PERSONAL INJURIES.—Sept. 28,
1909.

## Adams v. Louisville & Nashville R. R. Co.

Appeal from Boone Circuit Court.

J. W. CAMMACK, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Re‑
versed.

1. Carriers—Injuries to Passengers—Falling Baggage—Contribu‑
tory Negligence—Question for Jury.—A passenger wearing
a heavy crepe veil, boarded defendant's train, and was taken
to a seat by the brakeman, and her ticket taken by the con‑
ductor. After three or four stops, the passenger was in‑
jured by the fall of a suit case belonging to another passen‑
ger from the parcel rack above her, which she had not pre‑
viously seen. Held, that whether she was negligent in not
observing the suit case or in sitting under it without objec‑
tion was for the jury.

2. Carriers—Injuries to Passengers—Acts of Other Passenger.—
A carrier is not responsible for injury to a passenger from
the acts of another passenger, unless the circumstances are
such that, by the exercise of ordinary care, he could have
anticipated the danger and guarded against it.

3. Carriers—Injuries to Passengers—Falling Articles—Negli‑
gence—Question for Jury.—Where a passenger was injured
by the fall of a suit case from the parcel rack where it had
been placed by another passenger in such a position that
the oscillation of the train was liable to cause it to fall as it
did, and it had remained in the rack prior to the accident
for a sufficient length of time to warrant a finding that the
carrier's employes should have taken notice of its dangerous
position, whether the carrier was negligent in not doing so
and in failing to remove or secure it was for the jury.

J. G. TOMLIN and J. L. VEST for appellant.

BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Mary Adams was a passenger on a train of the Louisville & Nashville Railroad Company from Latonia to Walton. Several other members of her family were with her. She had on a heavy crepe veil. Her son-in-law had died, and they were taking the corpse to Walton. The brakeman helped her upon the train, and took her to a seat, which was near the front end of the car. When she had ridden about 12 miles in this seat, and as the train was pulling out of Bank Lick station, a suit case which had been placed in the rack overhead before she got upon the train fell out of the rack upon her, inflicting, as the proof for her tends to show, a serious injury, to recover for which she brought this action. She did not know that the suit case was in the rack until it fell upon her. It belonged to a lady who sat just behind her and had placed it there before she got on the train. The rack in which the suit case was placed was 34 inches long, 8 1-2 inches wide, and 3 inches deep. It was rounding at the corners. The suit case which fell was not produced at the trial, but the plaintiff produced another which she said was just like it, only the one that fell was two or three inches longer. The suit case which was produced was 21 inches long, 14 inches high, and 7 1-2 inches wide. The train had made three or four stops, and the conductor and brakeman had each been through the car at each of these stops; but neither of them had in fact seen or noticed the suit case, and neither of them knew of its fall on Mrs. Adams or of her being hurt, she having gotten off the train without complaining to them, apparently supposing at the time that she had suffered no substantial injury. On these facts the cir-

cuit court instructed the jury peremptorily to find
for the defendant, and, the plaintiff's petition having
been dismissed, she appeals.

Whether the plaintiff was guilty of contributory
negligence in not observing the suit case or in sitting
under it without objection was clearly a question for
the jury. She had on a heavy crepe veil, and, having
been invited by the brakeman to take the seat, would
naturally follow his direction without looking around
at the rack to see if it was safe; for she had a right
to assume that the brakeman would not invite her to
a seat that was unsafe. It remains to determine
whether there was any evidence of negligence on the
part of the servants of the railroad company. The
rule is if there is any evidence the question is for
the jury. When a carrier has provided a sufficient
vehicle, it is not responsible for an injury to one pas-
senger from the acts of another, unless the circum-
stances are such that by the exercise of ordinary care
he should have anticipated the danger and guarded
against it.

In Hutchinson on Carriers, Sec. 920, the rule is
thus stated:

"Where the carrier has provided properly con-
structed vehicles and established reasonably proper
rules for their management, he will not be liable for
an injury to a passenger caused by an article brought
into the vehicle by another passenger, unless such in-
jury could reasonably have been foreseen by him and
provided against."

The question that we have before us is, then, ought
the carrier by the exercise of ordinary care in this
case to have anticipated the danger to Mrs. Adams
from the falling of the suit case upon her; for, if the
circumstances were such as to make it his duty to an-

ticipate that the suit case might fall upon her, he should have guarded against the danger.

In Morris v. N. Y., etc. R. R. Co., 160 N. Y. 678, 13 N. E. 455, a clothes wringer which was wrapped up in a piece of paper fell out of a rack upon a passenger and injured him. It was held that, the wringer being so wrapped up and concealed as not to show what was in the package, the railroad men, having no notice that there was any danger from it, were not guilty of negligence in not requiring it moved from the rack, and so the company was held not liable. In Whiting v. N. Y., etc., R. R. Co., 97 App. Div. 11, 89 N. Y. Supp. 584, the plaintiff was injured by the falling upon her of a telescope satchel as in this case, but there she saw the telescope in the rack, and knew it was there. It projected over the edge of the rack a few inches; but the appearance of the telescope as placed in the rack did not suggest that there was any danger from it, and the court held the railroad company not responsible on the ground that at no time before it fell was there anything in its appearance to indicate that it was likely to fall. The court said: "The necessary inference from the evidence is that the satchel was properly placed in the rack at the start, and that the ordinary and usual motion of a fast train in the course of 2 1-2 hours had gradually moved it until the center of gravity projected beyond the edge of the rack. I can not see how this fact in itself, without some evidence of a situation calculated to excite apprehension existing for an appreciable period before the accident, justifies a charge of negligence on the part of the conductor or the trainmen. There was no evidence that any of them saw the satchel at all. Still less that a sight of it at any time before the moment that it fell would have sug-

gested danger. The rack was there·for the purpose of receiving just such baggage.''

The decision of this court in Clarke v. L. & N. R. R. Co., 101 Ky. 34, 39 S. W. 840, 18 R. 1082, rests upon the same ground. In that case a passenger was burned by the explosion of a can of gasoline which a fellow passenger had taken into the car, and it appeared that there was nothing to show that any officer of the defendant knew that the can was there or that it contained gasoline, or had any reason to anticipate any danger.

The case of Gulf, etc., R. R. Co. v. Shields, 9 Tex. Civ. App. 652, 28 S. W. 709, 29 S. W. 652 is to the same effect. In that case a fellow passenger had a jug containing alcohol. The jug fell out of the sack, the alcohol was spilt on the floor, and took fire. But none of the trainmen knew that there was a jug of alcohol in the sack, and there was nothing in the appearance of the sack to indicate danger. The authorities are uniform that it is incumbent upon the carrier to protect a passenger from injury at the hands of a fellow passenger, where, by the exercise of ordinary care, he should anticipate and guard against it. 2 Hutchinson on Carriers, Sec. 981. In like manner, it has been held that the carrier is liable to a passenger who stumbles over an obstruction in the aisle, where by ordinary care he should have known of the obstruction and made the aisle safe, and that this is ordinarily a question for the jury. See Railroad Co. v. Buckmaster, 74 Ill. App. 575.

If the plaintiff's testimony. is true, the suit case when lying flat upon the rack would protrude beyond its edge between five or six inches. The rack was composed of metal bars uniting in a metal rim at the outside. If an object was placed entirely within the

rack, the rim would hold it in; but if it protruded beyond the rim, there would be nothing to stay it when moved by the oscillation of the cars. If a suit case protruded as much as 5 or 6 inches beyond the edge of the rack, and was 14 inches wide, a very slight movement of the suit case from the oscillation of the train would throw its center of gravity outside of the rack. The fact that the trainmen did not see the suit case in the rack is not conclusive that the defendant is not liable. It was incumbent upon them, not only to exercise ordinary care to have a safe car when they started, but to see that the car continued safe during the journey. Those in charge of a passenger train can not shut their eyes to the condition of the car as the train goes along. They must exercise ordinary care for the safety of the passengers, and, although the trainmen had not in fact seen the suit case in the rack, still, according to the evidence of the plaintiff, it was not placed there after she got on the train, and had been there the whole time that she occupied the seat. Both the trainmen had been through the car three or four times while she was riding there. The brakeman had taken her to the seat, and the conductor had taken up her ticket there. If there was anything in the appearance of the suit case to indicate danger of its falling, the condition of things had existed long enough for it to be a question for the jury whether, by the exercise of ordinary care, they should have observed it. As the suit case protruded so far beyond the rack and the center of gravity would so easily be thrown beyond its edge, it was a question for the jury whether the trainmen by the exercise of ordinary care should not have apprehended danger to a passenger sitting beneath. In

matters of this sort the trainmen are only required to exercise such care as may be reasonably expected of persons of ordinary prudence under the circumstances, and as to what should be expected of a person of ordinary prudence a jury of 12 men, coming from the different walks of life, and putting together their common experiences, are peculiarly qualified to judge. The facts shown do not make out a case where it may be declared as a matter of law that the defendant's servants exercised ordinary care, and that there is no room for a difference of opinion on the subject. We do not hold that the defendant is liable. We only hold that the question of negligence is for the jury. The plaintiff's proof by Mr. Davies, the defendant's superintendent, is to the effect that the car racks were alike in all the cars of this class, and therefore the measurements which the plaintiff made of the racks of another like car on the road were properly admitted.

Judgment reversed, and cause remanded for a new trial.