[Civ. No. 4123. First Appellate District, Division Two.—March 22, 1922.]

IDA M. GINOCHIO et al., Respondents, v. THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

[1] NEGLIGENCE—DEATH OF STREET-CAR PASSENGER—EVIDENCE—PRESUMPTION AGAINST CARRIER—ERRONEOUS INSTRUCTION.—In an action for the death of a person while attempting to board a street-car wherein the defendant admitted the two theories of the plaintiff that the deceased was a passenger by failure to deny the amended complaint, and the sole issue in the case was whether the accident was caused by defendant's negligence, and the evidence of all the eye-witnesses was that the car had not stopped at its regular stopping place before the deceased attempted to board it, it was

---

1. Presumption of negligence from injury to passenger, notes, 13 L. R. A. (N. S.) 601; 29 L. R. A. (N. S.) 808; L. R. A. 1916C, 364.

error to instruct the jury that when a passenger is injured by an
instrumentality under the control of the carrier, it is presumed
that he was injured through the carrier's negligence.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.    Franklin A. Griffin,
Judge.    Reversed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, and R. T. Ainsworth and
Charles S. Peery, Assistant City Attorneys, for Appellant.

Daniel A. Ryan and Vincent W. Hallinan for Respond-
ents.

STURTEVANT, J.—Angelo Ginochio was injured while
attempting to board one of the street-cars operated by the
defendant.    Later he died of the injury so sustained.    The
plaintiffs sued the defendant for damages, judgment went
for the plaintiffs, and the defendant has appealed.

For some time prior to his death the decedent had been
residing near the corner of Jones and Vallejo Streets, in
San Francisco.    Early in the afternoon on Sunday, the
eighteenth day of April, 1920, he was seen on and was
seen to get off from a south-bound Van Ness Avenue car,
operated by the defendant, and to take a position at a
stopping place on the easterly side of the track known as
the Van Ness-Eleventh Street line.    Whether the decedent
was on the sidewalk or was out in the street nearer the car
track is not certain.    Some of the witnesses placed him in
one of those spots and other witnesses placed him in the
other.    The decedent and other persons, five or six in num-
ber, waited in that locality for several minutes, some of
the witnesses stating that they had waited as long as ten
minutes.    The decedent stood at the extreme eastern side
of the group, some of the others standing farther to the
west and in the immediate vicinity of the monument which
stands at the intersection of Van Ness and Market.    Be-
tween the stopping place first mentioned and the monu-
ment the tracks of the Van Ness line cross over Market
Street in a southeasterly direction, making an acute angle

with the north line of Market Street. When the persons above mentioned were in the positions we have described a west-bound car came up Market Street. As the car approached the intersecting tracks it slowed down, but did not stop. The witness Kelly testified that the car slowed down to two miles an hour, and after it had nearly crossed the intersecting tracks that it started up suddenly. He stated that the decedent approached the car, put one foot on the car, took a hold of it, and immediately fell. He says that the car slowed down at the first stopping place but that it did not stop at all. Mr. King, the only other eye-witness called by the plaintiff, testified that the decedent attempted to get on the car when it was slowing down, at the same time the car fed up and the decedent was thrown to the pavement. The defendant called five witnesses, including the conductor and the motorman. All five of those witnesses stated that the car did not stop until it reached a place in front of the monument. All five were of the opinion that the car approached the intersecting street-car tracks at a speed, variously estimated, at from four to ten miles an hour, and crossed over those tracts at a greater speed than testified to by the plaintiff's witnesses. The motorman testified that he did not see the decedent, and did not know of the accident until his car came to a stop. The other witnesses testified that they saw the decedent and that he either jumped for, ran for, or ran after the moving car. The conductor testified that as the car approached the intersecting tracks he saw the group apparently waiting to board the car; that, as his platform was opposite the group, he motioned to the people to go to the stopping place at the monument; that a little later he saw the decedent run up from the rear, attempt to board the car, fail in the attempt, and fall to the ground. He says he gave a signal of three bells to stop, but the car did not stop until it reached the monument. It was the theory of the plaintiffs that the decedent was a passenger by reason of (1) having become such on the Van Ness Avenue car and being transferred to a west-bound car; and (2) although the decedent had not entered the west-bound car that the surrounding circumstances were such as to show an intent on his part to become a passenger and an acceptance of him

by the carrier as a passenger. (*Nilson* v. *Oakland Traction Co.*, 10 Cal. App. 103 [101 Pac. 413].) By its failure to deny the amended complaint, the defendant admitted both of these theories. But it was also the theory of the plaintiffs that the accident was caused by the negligence of the defendant. This theory was traversed by the defendant and it was the sole issue in the case.

[1] In instructing the jury, acting upon the request of the plaintiff, the trial court gave, and the defendant now objects to, three several instructions worded as follows:

"It is the law that a person riding upon the defendant's car, who is entitled to transfer to a connecting line of the defendant's railway, and who leaves said car for the purpose of transferring to said connecting line, is, while taking the direct and usual route from one line of cars to the other, and while waiting to board the second car for the purpose of continuing his journey, a passenger of the defendant's railway, and that the defendant owes to him the obligation due from a carrier of persons to its passengers, that is, the highest degree of care.

"A passenger so transferring from one line of defendant's cars to another is entitled to assume that defendant will exercise toward him the duty that it owes him, namely, to provide him with the highest degree of care.

"When a passenger is injured and such injury is shown to have been occasioned by some instrumentality which the carrier had under his control or by the manner in which the carrier uses said instrumentality, then it is presumed that he was injured through the negligence of the carrier, and the burden is cast upon the carrier to show that such is not the case."

The respondents rely upon the rule stated in *Hart* v. *Fresno Traction Co.*, 175 Cal. 489 [167 Pac. 885], as showing that the defendant was negligent, but the agents of the defendant in that case were guilty of active negligence; they held out an invitation to the plaintiff Hart to board the car, and, as he did so, they so manipulated the car as to throw him off of it. Assuming that the decedent held a transfer and that he was in the act of transferring, or that he was an intending passenger, the evidence does not show that the defendant violated any duty which it owed to the

decedent.  It did not appear from the evidence that the ground work of the defendant's right of way was defective, nor that the ground work immediately adjacent was defective, nor that there was any kind of a trap created by the defendant.  It did not appear that the instrumentality being operated by the defendant was in any respect defective, or that, in any respect it was operated in a negligent manner.  No inference or presumption obtained as against the uncontradicted sworn testimony of all the eye-witnesses.  As addressed to a case involving such an issue as was here involved, we think that the foregoing instructions were not at all pertinent.  In *Steele* v. *Pacific Electric Ry. Co.,* 168 Cal. 375, 381 [143 Pac. 718, 720], the court said: "Here the essential fact in issue was, how did the accident occur; was it through the act of defendant in starting up the car while plaintiff was attempting to alight, or did it result from an attempt on her part to get off while it was still in motion?  And the vice of the instruction was in ignoring any necessity on the part of the jury of finding adversely to the defendant on this issue as a prerequisite to applying the presumption against it, but on the contrary instructing them that such presumption arose and could be applied simply from proof of injury sustained by the plaintiff."  True it is that Mrs. Steele was in the act of leaving the car, whereas the decedent in this case was engaged in boarding a car, but certainly the facts were stronger in the Steele case, where it was never disputed that Mrs. Steele was a passenger.  In a case in which the facts were far more favorable to the plaintiff, *Graff* v. *United Railroads,* 178 Cal. 171, at page 173 [172 Pac. 603, 604], the court said: "In the present case there was a dispute over the question whether the injury arose from the manner of operating the car, or from the plaintiff's carelessness in standing too near the side thereof, and the question as to which was the cause of the injury should have been left to the jury instead of being taken from them by the absolute character of the instruction given."

The judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 18, 1922.

All the Justices concurred, except Lawlor J., who dissented.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.