[Civ. No. 3185.   Fourth Dist.   Feb. 14, 1946.]

MARY GLADYS PRUNTY, Respondent, v. JOHN CLEET ALLRED et al., Appellants.

Borton, Petrini, Conron & Borton, Cooley, Crowley & Supple, Cooley, Crowley, Gainther & Dana and Paul Dana for Appellants.

Rae B. Carter, John D. Chinello and Dorsey & Campbell for Respondent.

GRIFFIN, J.—On May 1, 1943, plaintiff became a passenger, at Tulare, on one of the buses owned by defendant Pacific Greyhound Lines, Inc., a corporation, a common car-

rier of persons for hire, which bus was driven by defendant Allred. Plaintiff was a teacher in high school and her duties were taking her to a meeting at Bakersfield. Forty-one seats in the bus were arranged along both of its sides, with an aisle down the center. About 4 feet 8 inches from the floor and about 10 inches from the top of the head of a person of ordinary height seated in the seat, two metal racks for hand baggage of passengers were provided, one on each side of the bus over the seats. These racks had an outside vertical rail about 4 inches high. Plaintiff entered the bus and occupied the aisle seat immediately behind the driver on the left-hand side of the bus. She had no baggage. The driver of the bus testified that it was his duty, and that at frequent intervals he did inspect the baggage in the racks to see that it was properly stowed and safely placed. He was provided with a rear view mirror. After passengers entered the bus he would look down the racks and if the baggage looked all right he would go ahead. Between Tulare and Delano a fur coat fell from the rack immediately above plaintiff and descended upon her. The owner of the coat, seated in a seat immediately back of her, folded it and replaced it in the rack. The driver of the bus did not notice the coat nor the incident. At Delano a Miss Grimes boarded the bus as a passenger and occupied the window seat alongside of plaintiff. After entering, she placed her paper suitcase or overnight bag in the rack above the seat in which plaintiff was sitting. The bag was about 18 inches long, 14 to 16 inches wide, and about 7 inches deep. It contained overnight wearing apparel and weighed in all about five pounds. It was put together with metal bands or "claws" on the corners. She testified that there were other articles and a fur coat on the rack "close by the place" where she put the bag. There is no direct evidence that the bag was placed on top of the fur coat, although each counsel in his argument to the jury stated that it was his opinion that the bag was placed on top of the fur coat. Miss Grimes further testified that the bag, as placed by her, was in a level position, not on any incline and not projecting over the edge of the rack.

The bus driver testified that before leaving Delano he "glanced over and looked over" the baggage generally and did that ever time he stopped; that so far as he could see "it was all right."

About 25 miles south of Delano the suitcase or overnight

bag fell from the rack above plaintiff and one of the corners thereof struck her on the right front temple of her head "as though a hammer had hit me." According to plaintiff it fell at a time when the bus, while traveling about 45 miles per hour, had passed a truck which they had overtaken, at the time when the bus came back into its own lane "rather suddenly . . . because there was oncoming traffic." The bus driver brought the bus to a stop. The bag was rescued from the floor. Plaintiff immediately complained of a headache, a severe neck pain, and nausea. The driver assisted her from the bus at Bakersfield. She attended a meeting and was driven back to Tulare by another teacher. She said she experienced difficulty in walking and unsteadiness on her feet.

On May 2d, she was examined by her family physician, who prescribed rest and sedatives. She remained in bed under doctor's orders, until the end of July, 1943. She was then taken to a sanitarium where she remained until September 11, 1943, after which she came home and remained there until January 24, 1944.

Her doctor's report to the State Compensation Insurance Commission diagnosing plaintiff's symptoms and condition was to the effect that there was concussion, probable traumatic arthritis of the cervical area, inflammation of the nerve, radical, leading to the spinal column into cervical area (raducilitis). Within a few days after the accident, plaintiff said she began experiencing a disturbance or blurring of vision at intervals.

The commission's doctors examined plaintiff on several occasions. They testified generally that her field of vision was only five degrees instead of the normal of 90 degrees; that her condition was diagnosed as hysteria, over which she had no control. On November 26, 1944, they found her field of vision about 20 degrees. They testified that her condition could not be simulated; that it was a permanent unstable condition due to shock resulting from the injury.

Intimate friends testified as to her changed condition since the accident. She testified that her loss of wages during the period mentioned was $2,083.14. She received an annual salary of $2,725, but employed a substitute teacher in her stead. Her medical and hospital expenses amounted to $686.46. The jury returned a verdict in her favor for $10,000.

The first contention of defendants on appeal from the judgment is that the evidence is insufficient to sustain the

judgment. It is argued that since there is no evidence that the baggage rack gave way or was faulty in construction, that there was no evidence of negligent operation of the bus, and that since there was nothing visible to the driver of the bus indicating that the bag was not secure, there was no liability on the part of the defendants.

At the request of plaintiff, the court gave an instruction on the res ipsa loquitur rule as follows:

"From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. . . . That inference is a form of evidence and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff, . . . Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant . . . to rebut the inference by showing that it did, in fact, exercise the utmost care and diligence but that the accident occurred without being proximately caused by any failure of duty on its part."

It is strongly contended that this doctrine was inapplicable to the case and that the jury was improperly instructed on the doctrine.

Civil Code section 2100 provides that a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. Viewing the evidence in its most favorable light, in support of the judgment, which we, as a reviewing court must do, an inference of negligence was permissible from the failure of the bus driver to discharge the duty of inspecting the baggage in the racks and seeing that it was properly stowed and securely placed. It is likewise obvious from the statement of facts, that an inference of negligence was permissible from the manner in which the bus was operated. The falling of the baggage was coincidental with the movement of the bus in suddenly coming back into its own lane of traffic to avoid oncoming traffic after passing the truck.

The question whether the instruction on res ipsa loquitur was applicable to the facts as related is a close one. Although a carrier is held to a high standard of care, not

every injury to a passenger is presumed to arise from negligence on its part. It must first be shown that the injury came from the movement of the bus by those in charge of it or from something in connection therewith, or from something in the control of the defendant.

Defendants cite *Wade* v. *North Coast Transportation Co.*, 165 Wash. 418 [5 P.2d 985], in which case a suitcase fell on plaintiff under similar circumstances when the bus made a sudden "lurch or jerk." In this decision *Diamond* v. *Weyerhaeuser*, 178 Cal. 540 [174 P. 38], and *Stevens* v. *Boston Elevated Ry. Co.*, 199 Mass. 471 [85 N.E. 571], are discussed. It was there held that the evidence was not sufficient to sustain a recovery. To the same effect is *Morris* v. *New York Central & H. R.R. Co.*, 106 N.Y. 678 [13 N.E. 455]; *Whiting* v. *New York Central & H. R.R. Co.*, 97 App.Div. 11 [89 N.Y.S. 584]; *Creahan* v. *Pennsylvania R.R. Co.*, 123 Pa.Sup.Ct. 268 [187 A. 51]; *Ginochio* v. *San Francisco*, 57 Cal.App. 150 [206 P. 763].

In *Stimson* v. *Milwaukee L. S. & W. Ry. Co.*, 75 Wis. 381 [44 N.W. 748], it was stated that personal baggage of passengers is not a thing under the management of the defendant and it was necessary for plaintiff to show by other proofs that the company was guilty of some negligence or want of ordinary care in regard to the baggage.

It is argued here that the overnight bag was never, at any time, under the exclusive control of defendants, one of the necessary elements before the doctrine applies, citing *Gerhart* v. *Southern Cal. Gas Co.*, 56 Cal.App.2d 425, 431 [132 P.2d 874]. It has been repeatedly held that the doctrine may be relied upon where a thing which causes injury is shown to be under the exclusive management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care. In such cases an inference arises that the accident resulted from the want of proper care. In this action the jury may have been justified in believing that it was the negligent operation or movement of the bus, which bus was admittedly under the exclusive control of defendant, that caused the accident and injury by "rather suddenly coming back into its own lane" and thereby causing the baggage to fall upon plaintiff; that the sudden and negligent operation of the bus was the proximate result or efficient cause of the accident and injury, i. e., that cause which in natural and

continuous sequence, unbroken by any efficient intervening cause, produced the injury, and without which the injury would not have occurred, and that the falling of the suitcase was coincidental thereto, and had a causal connection with such operation.

In the decision of *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533], many of the authorities cited by appellant are discussed and distinguished. It was there specifically held that when a passenger is injured *by the movement or operation* of a street car, he need not show that the movement or operation was *unusual* before the rule of res ipsa loquitur can be applied, so long as the injury *results* from such *movement* or operation. It likewise held that mere injury to the passenger does not place upon the carrier the duty of explanation, but the establishment of such injury, coupled with proof of *coincident* and *causal* collision, derailment, or other happening to the car, does cast upon the defendant the burden of exculpation.

This same question was considered in *Lynch* v. *Market Street Ry. Co.*, 130 Cal.App. 433, 438 [19 P.2d 1009], and many authorities are there cited, including some cited by appellants. The giving of an instruction on the doctrine of res ipsa loquitur was held to be proper.

The fact that the evidence is conflicting or leaves it doubtful whether the ultimate cause of an injury to a passenger was the negligence of the common carrier does not render it improper to instruct the jury on the doctrine of res ipsa loquitur. (*Lynch* v. *Market Street Ry. Co., supra.*)

The complaint alleges negligence, both generally and specifically. It charges that defendants negligently managed and operated the bus and as a proximate result of that negligence, the baggage was thrown with great force against plaintiff's head, causing her great injury. Under the pleadings and the evidence, an instruction on the doctrine was proper. (*Leet* v. *Union Pacific Railroad Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008].) The case was tried and both sides argued to the jury upon the theory that the doctrine was applicable, depending upon the jury's interpretation of the evidence.

Complaint is made that the form of the instruction is deficient and not a correct exposition of the law. The instruction informed the jury that from the mere ''happening of the accident,'' as established by the evidence, an inference arose

that the proximate cause of the occurrence was some negligent conduct of defendant. This form of instruction has been held to be erroneous in certain cases.

In *Mudrick* v. *Market Street Ry. Co., supra,* p. 731, the court said:

"It will be noted that in this instruction the jury was told that the mere proof of injury to plaintiff on defendant's car cast upon the defendant the burden of proving the absence of negligence on its part, or contributory negligence. In that instruction nothing was said as to the injury being caused by the movement or operation of the car. For such omission the instruction was erroneous. It differed materially from the three criticized instructions in the present case which expressly referred to the injury as 'caused by the operation [or movement] of the car'. This difference in the wording of the instruction in that case and those in the instant case was pointed out in the opinion in the Steele case (*Steele* v. *Pacific Elec. Ry. Co.,* 168 Cal. 375 [143 P. 718]) in the following language: 'It is not the law, as the argument of the plaintiffs implies, that the mere fact that a passenger is injured while aboard a car, or while alighting therefrom, creates a presumption that the injury was caused by want of care on the part of the defendant operating such car. It must first be shown that the injury came from the movement of the car by those in charge of it, or from something connected therewith, or in control of the defendant. When this is done, the law then presumes, *prima facie,* that the particular thing thus shown to have caused the injury was due to the defendant's negligence, and the burden is thrown upon the defendant to disprove the *prima facie* case thus made.' '' (See, also, *Lynch* v. *Market Street Ry. Co., supra.*)

In the Steele case, *supra,* it was pointed out that there are certain cases in which an instruction, similar to the one here in dispute, has been approved. (*MacDougall* v. *Central R. R. Co.,* 63 Cal. 431; *Bush* v. *Barnett,* 96 Cal. 202 [31 P. 2]; *Boone* v. *Oakland Transit Co.,* 139 Cal. 490 [73 P. 243]; *Kline* v. *Santa Barbara etc. Ry. Co.,* 150 Cal. 741 [90 P. 125]; *Housel* v. *Pacific Electric Ry. Co.,* 167 Cal. 245 [139 P. 73, Ann.Cas. 1915C 665, 51 L.R.A.N.S. 1105].) In each of those cases it was shown that there was no question but that the injury was caused by collision or derailment of the car in which the plaintiff was a passenger, or while he was alighting from it, and there was no issue as to how the injury occurred.

It was held that under those circumstances, the giving of the instruction was proper.

In the instant case, there is no doubt that the incident, resulting in the fall of the handbag or suitcase from the rack, happened during the time the bus was in motion and was due to the movement of the bus. The evidence does not justify any other reasonable construction. Since it is not necessary to show that the movement was "unusual" before the rule ·can be applied, we must conclude that the giving of the instruction in the form submitted, under the facts of this case, was not prejudicially erroneous. (*Gerdes* v. *Pacific Gas & Electric Co.*, 219 Cal. 459 [27 P.2d 365, 90 A.L.R. 1071] ; *Edwards* v. *Gullick*, 213 Cal. 86 [1 P.2d 11] ; *Gonzalez* v. *Nichols*, 110 Cal.App. 738 [294 P. 758].) ■ The trial court instructed the jury that there was not sufficient evidence of contributory negligence on the part of the plaintiff and withdrew that issue from the jury. We are unable to discover any evidence supporting defendants' claim that plaintiff was guilty of contributory negligence. Nothing is mentioned in their argument to the jury indicating that she was guilty of contributory negligence. She did not place the baggage in the rack, she was not charged with the duty of inspecting the baggage, nor did she assume it. She had no notice requiring her to be on the lookout to protect herself against such danger. She was a passenger for whose safe carriage the defendants were charged with the duty of exercising the utmost care and diligence. (Civ. Code, § 2100.) Defendants have not pointed out wherein she could be so charged. It was therefore proper for the court to withdraw that issue from the jury's consideration. (*Blackwell* v. *American Film Co.*, 189 Cal. 689, 699 [209 P. 999].)

■ The last claim is that the award of $10,000 was excessive. Defendants offered no medical testimony at the trial. The evidence shows that plaintiff suffered a concussion, disruption of the nervous system, and a remarkable loss of field of vision. Her injuries, according to the record, appear to be serious and permanent. They curtailed her activities as a school teacher for many months and threatened her future activities. Her special damages for loss of salary and medical bills aggregated over $2,700. It cannot be said, as a matter of law, that a general verdict for the remaining $7,300 is excessive. The trial court considered this matter on a motion

for new trial. The issue was primarily factual in nature. The court and jury had the opportunity to observe plaintiff's affliction and the extent of her injuries. Suffering from the disruption of the nervous system of the human body may become, and often is, more intense and severe than most any other form of suffering. Its duration is problematical. (*Coleman* v. *Galvin*, 66 Cal.App.2d 303 [152 P.2d 39]; *Johnson* v. *Pearson*, 100 Cal.App. 503 [280 P. 394]; *Sloan* v. *Original Stage Line, Inc.*, 124 Cal.App. 317 [12 P.2d 465].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied March 13, 1946, and appellants' petition for a hearing by the Supreme Court was denied April 11, 1946. Traynor, J., voted for a hearing.