[Civ. No. 538.   Third Appellate District.—February 19, 1909.]

## AUGUST N. NILSON, Respondent, v. OAKLAND TRACTION COMPANY, Appellant.

NEGLIGENCE—INJURY TO PASSENGER BOARDING STREET-CAR—PREMATURE SPEED—SUFFICIENCY OF COMPLAINT—IMPLIED AVERMENTS—EVIDENCE UNOBJECTED TO.—In an action for alleged negligence of a street-car company in prematurely starting its car with speed at a crossing, while plaintiff was boarding the car, to his injury, when the complaint alleges the custom of defendant's cars to stop thereat, that plaintiff signaled the motorman to stop the car when he was in full view of the motorman and conductor, whereupon it slowed up and came nearly to a standstill, and that the car was under the charge, management and control of the motorman and conductor, it is implied from such averments, for the purpose of a cause of action, that the car was started suddenly through the agency of defendant's servants, and that they had knowledge that plaintiff desired to board the car, and the absence of express averments to that effect is waived by evidence thereof without objection.

ID.— INARTIFICIALITY OF COMPLAINT — NEGLIGENCE SUFFICIENTLY AVERRED.—*Held,* that, notwithstanding the inartificiality of the complaint in certain respects, it sufficiently charges that defendant was responsible for the act causing the injury to plaintiff, and that said act was the result of inattention and want of care on its part.

ID.—RELATION OF CARRIER AND PASSENGER SHOWN—HIGHEST DEGREE OF CARE REQUIRED—RIGHTS OF PASSENGER INJURED.—When the complaint by fair and reasonable intendment presents the case of the plaintiff signaling at the proper place for the motorman to stop the car in order that he may take passage, in response to which

signal the car is brought virtually to a standstill, and of the plaintiff in the act of boarding the car, it shows the relation of carrier and passenger then existing between them, with the corresponding obligation of the carrier to use the highest degree of care toward the passenger, and the corresponding right of the passenger to recover damages resulting from the want of such highest degree of care.

ID.—VIOLATION OF DUTY OF CARRIER—SUDDEN STARTING OF CAR WITHOUT WARNING—DUTY OF KNOWLEDGE OF CONDUCTOR.—It was a clear violation of duty of the carrier suddenly to start the car forward with speed without warning to plaintiff, as a passenger; and it is no answer to say that it does not appear that the conductor had knowledge of plaintiff's position at the time, as under the facts alleged it was his duty to know it, and it is implied as a matter of law.

ID.—PRESUMPTION OF NEGLIGENCE FROM INJURY TO PASSENGER—BURDEN OF PROOF.—A *prima facie* case of negligence is established, when the plaintiff shows that he was injured while being carried as a passenger by the act of the carrier in operating the instrumentality employed in his business. In such a case there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without negligence on his part.

ID.—APPLICABILITY OF INSTRUCTION TO EVIDENCE—PROVINCE OF JURY.—A proper instruction as matter of law, based upon the supposition that the car, in response to the signal of the intending passenger, either stopped, or was slowing up as if intending to stop, is justified by evidence that the car was practically at a standstill. A hypothetical instruction applicable to any part of the evidence does not invade the province of the jury.

ID.—ABSENCE OF SUBSTANTIAL VARIANCE—THEORY OF TRIAL.—*Held,* that there was no substantial departure of the evidence from the case made by the pleadings, and that where the case was tried upon the theory that the evidence in the case was within the issues of the pleadings, it should not be held otherwise on the question of the applicability of instructions to the evidence.

ID.—APPLICABILITY OF INSTRUCTION AS TO LAST CHANCE UPON CARRIER. *Held,* that there was evidence in the case sufficient to justify an instruction that, even if there was negligence of the plaintiff, yet if at the time when the injury was committed, the carrier might have avoided the resulting injury by reasonable care and prudence when aware of his peril, it was liable for the injury.

ID.—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—*Held,* that it cannot be said, from the evidence as matter of law, that plaintiff, by his own negligence, is precluded from recovery, but that it was for the jury to determine.

ID.—NOT NEGLIGENCE PER SE TO BOARD SLOWLY MOVING CAR.—If a car is moving slowly, it is not negligence *per se* for a passenger to attempt to board it. It is matter of common knowledge that such act is done many times daily in all large cities; and whether the act involves any peril or want of care must depend upon the particular circumstances of each case. *Held*, that an instruction leaving the question to the jury to determine whether or not the plaintiff was negligent in boarding the car under the circumstances of this case was properly given.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Harmon Bell, for Appellant.

C. W. Eastin, for Respondent.

BURNETT, J.—Defendant appeals from the judgment for $2,500 in favor of plaintiff and from the order denying its motion for a new trial.

The action was for damages in consequence of personal injuries caused by the negligent act of defendant in starting its street-car suddenly forward whereby plaintiff, who was about to board it, was thrown violently to the ground.

The allegations of the verified complaint material to the inquiry here are as follows:

"That from a time prior to the 6th day of September, 1905, continuously thence forward until after said day, said defendant owned, controlled, operated and maintained a system of street railroads in, along and upon the public streets, within the corporate limits of the City of Oakland in said County of Alameda. That on the 6th day of September, 1905, and at the time of the injury to plaintiff herein alleged, said defendant was so operating and maintaining a line of street-cars in, along and upon Broadway Street, in said City of Oakland, which cars were operated and propelled by electricity, and each of which cars was in the charge and under the management and control of two servants or agents of the defendant, known as and called, respectively, a motorman and a conductor. That on said 6th day of September, 1905, it was the custom of said defendant, by and through its said

servants and agents, to stop each of said cars at the corner of Ninth street and Broadway, to enable passengers to board said cars at said point. That on said day plaintiff waited at said street corner to take passage upon one of said cars of defendant, and while so waiting one of said cars approached said street corner in the usual manner, whereupon plaintiff stepped toward said car and signaled the motorman standing in the front of said car to stop, whereupon said car slowed up until the same had come very nearly to a standstill, whereupon plaintiff took hold of the stanchion or support upon the side of said car for the purpose of boarding the same, and was in the act of boarding the same, whereupon but before plaintiff could obtain a footing upon said car sufficiently to enable him to board the same and maintain his place upon said car, said car was started suddenly forward with great speed and without warning to plaintiff; that the forward movement of said car was so sudden and unexpected and so rapid that plaintiff was unable with safety to relax his hold upon said support and was also so violently jerked as to prevent him from getting upon said car, and that while so holding said support and in said situation plaintiff was dragged for a considerable distance and until he was unable longer to maintain his hold upon said car, when he was thrown violently to the ground, and said car continued along said Broadway at a rapid rate of speed, leaving plaintiff where he fell. That at said time no other persons than the motorman and the conductor were upon said car; that said conductor was standing apparently talking to the motorman in the front end of said car, and plaintiff was in full view of said motorman and conductor when he signaled said car to stop as aforesaid.'' A general demurrer was interposed and overruled by consent. The answer denied any negligence of or by defendant and set up contributory negligence on the part of plaintiff.

Appellant presents a summary of its contentions as follows: ''1. The complaint, on which the verdict is founded, does not state facts sufficient to constitute a cause of action. 2. The instructions involving the question whether the car had come to a stop or not were not justified by the evidence. 3. The giving of the instructions involving the doctrine of last chance was not warranted by the evidence. 4. Plaintiff's

own evidence shows that he was guilty of contributory neg-
ligence.''

The objection to the complaint is stated in general terms
as follows: ''An examination fails to disclose any allegation
charging any wrongful act on the part of the defendant or
its servants—in fact it utterly fails to in any way connect
the injury suffered by plaintiff with any culpable or negli-
gent act of defendant or its servants.''

The particular specifications are that there is an omission
to allege that the car was started by defendant or that de-
fendant had knowledge that plaintiff desired to board said
car.

It is argued that ''in order to properly set forth a cause
of action founded on negligence it is necessary to allege that
the acts were done in a negligent manner unless the doing
of the acts themselves necessarily excludes any hypothesis
other than that of negligence.'' In this connection the fol-
lowing citations are made: ''It is true that in certain cases
where the facts stated do not constitute a cause of action un-
less done negligently, it must be averred that they were so
done, unless the facts themselves necessarily exclude any
hypothesis other than that of negligence.'' (*Silvera* v. *Iver-
son,* 125 Cal. 269, [57 Pac. 996].) ''The term negligence for
the purpose of pleading is a fact to be pleaded—an ultimate
fact, which qualifies an act otherwise not wrongful. Negli-
gence is not the act itself but the fact which defines the char-
acter of the act and makes it a legal wrong.'' (*Stephenson*
v. *Southern Pacific Co.,* 102 Cal. 147, [34 Pac. 618, 36 Pac.
407].)

The rule is stated with substantial accuracy in the forego-
ing, although it is to be observed that the declaration from
the Silvera case is unnecessary to the decision and it applies
the strict rule in relation to the exclusion of *any* hypothesis
other than that of negligence only to ''certain cases.'' How-
ever, in said case it was held that the complaint was sufficient
in the absence of a special demurrer, the court saying that
''From the averred relation of the parties it was the duty of
appellants—as averred—to supply a good reefing pennant,
and not having done so, and by reason thereof the respondent
having been injured, the appellants were liable for damages
whether the wrongful act was the result of negligence, or
inattention or other cause.''

In the Stephenson case also it is further declared—which is, indeed, apodictic—that "the absence of care in doing an act which produces injury to another is actionable. The term negligence signifies and stands for the absence of care."

Although it may be conceded that the complaint before us is somewhat inartificial and defective in the respects indicated, still we think it does appear therein that the defendant was responsible for the act causing the injury to plaintiff and that said act was the result of inattention and want of care on its part.

While there is no express allegation that the car was started suddenly through the agency of defendant's servants, this conclusion is necessarily implied in the language used. It is averred, as we have seen, that the car "was in the charge and under the management and control of the motorman and conductor."

If it was under their management and control its movements were not and could not be without their direction. Hence their participation in the accident is sufficiently alleged.

Again, when it is alleged that plaintiff, standing at a street corner where it was usual for the car to take on passengers, signaled the motorman to stop, whereupon said car slowed up "until the same had come very nearly to a standstill and plaintiff was in full view of said motorman and conductor when he so signaled said car to stop," it is impossible for anyone with ordinary understanding to misconceive the purpose of the pleader to convey the idea that the said change in the movement of the car was in response to the signal of the plaintiff and with a view of accepting him as a passenger. It is equally impossible for anyone to have any doubt that the motorman saw the plaintiff and understood the signal. This follows from the meaning of the word "signal," which is "to communicate by means of an understood sign." If the motorman was in full view of and was signaled by the plaintiff he must have seen the latter.

But if it should be held that the complaint is defective in this respect, the omission should be deemed supplied by the denial of the answer that "the car slowed up at all in response to any signal by plaintiff at any time and place." The issue was thus clearly made as to whether defendant's servants acted in pursuance of the signal of plaintiff. Indeed, the

case was tried upon the theory that there was nothing lacking in the complaint to show the agency of the defendant in stopping the car in response to plaintiff's invitation and for the purpose of accepting him as a passenger. Evidence addressed to these considerations was received without opposition and it is now too late for defendant to maintain an objection to what we hold to be at most a defective attempt rather than an entire failure to allege a material fact.

By clear intendment and reasonable construction we find in the complaint a case presented, therefore, of the plaintiff at the place where he should be signaling the motorman of a regular passenger car to stop in order that said plaintiff may take passage. In response to the signal the car is brought virtually to a standstill and the plaintiff is in the act of boarding the same. There is thus revealed the relation of carrier and passenger and the corresponding obligations growing out of this relation.

The rule seems to be well settled as stated by Hutchinson on Carriers, section 1005, "that a person may become a passenger without having come into the carrier's vehicle, if the surrounding circumstances show an intent on his part to become a passenger and an acceptance of him by the carrier as a passenger." The text is illustrated by reference to a case where a man was hurt by the starting of an omnibus just as he was putting his foot on the step, the driver supposing that he had entered. It follows, therefore, from the facts alleged that plaintiff was entitled to the same care as the law requires on behalf of passengers. This is the highest degree of care in their transportation and if injury results to the passenger in consequence of the failure of the carrier to exercise such care an action for damages will lie. (*Osgood* v. *Los Angeles etc. Ry. Co.,* 137 Cal. 280, [92 Am. St. Rep. 171, 70 Pac. 169]; *Cody* v. *Market St. Ry. Co.,* 148 Cal. 90, [90 Pac. 666].)

Going one step further, we find the allegation that the car was started suddenly forward without warning to plaintiff. This is obviously a violation of the duty owed by defendant to plaintiff, considering the latter's position at the time. It is no answer to say that it does not appear that the conductor had knowledge of plaintiff's position, as under the facts al-

leged it was his duty to have that information and it is implied as a matter of law.

In *McCurrie* v. *Southern Pacific Co.*, 122 Cal. 558, [55 Pac. 324], it is held that ''a *prima facie* case is established when the plaintiff shows that he was injured while being carried as a passenger by the defendant and that the injury was caused by the act of the carrier in operating the instrumentality employed in his business. In such case there is a presumption of negligence, which throws upon the carrier the burden of showing that the injury was sustained without negligence on his part.''

If a case is made out by showing those facts it must be sufficient in a complaint to allege them, as it appears has been done here.

The court committed no error in giving the following instruction: ''When a man signals a street-car, at a place where such cars stop with or without signal to take on passengers, for the purpose of stopping it so he can board it and become a passenger, and the car stops or slows up as if intending to stop at that point in answer to the signal, and the man steps forward to the car, in plain view of those in charge of the operation of the car for the purpose of boarding the car, it then becomes the duty of those in charge of the car to ascertain and know whether or not he has safely boarded the car, or is in the act of boarding it, and it is negligence for them to suddenly start the car forward without warning, while he is in the act of boarding the car.'' The legal proposition involved in the foregoing is not disputed by appellant, but it is contended ''that there was no evidence at the trial to the effect that the car had come to a stop,'' and therefore the instruction was prejudicial for the reason that the jury would be less likely to find plaintiff guilty of contributory negligence for attempting to board a car that had stopped than if it were in motion, and cases are cited to the effect that ''The giving of an instruction not supported by the evidence is sufficient ground for reversal when it appears that such instruction misled or might have misled the jury to the prejudice of the party complaining.''

But the plaintiff testified: ''And finally when the rear end of the car came it was moving so slow that I couldn't perceive whether it was moving or not or else standing still for

a moment, while I took hold of it with my hand." Mr.
Nichels, a witness for plaintiff, testified that "I can't say
positively that it stopped. It is absolutely impossible for me
to tell whether it was stopped, but it was going so slow that
it was practically at a standstill." The foregoing is amply
sufficient to justify the instruction based upon the hypothe-
sis that the car had stopped. It did not invade the province
of the jury, but presented the law applicable to a certain con-
tingency which in view of the evidence might be found to
exist.

Nor was there any substantial departure from the case
made by the pleadings. It is true that it was not alleged that
the car had come to a stop but it is averred that "it had come
very nearly to a standstill." Even conceding that the hy-
pothesis in said instruction goes beyond the allegation of the
complaint, it finds support in the evidence, and the case was
tried upon the theory that said evidence was within the issues
of the pleadings and it should not now be held otherwise.
If it had been deemed of sufficient importance to call to the
attention of the trial court, a simple amendment to the com-
plaint no doubt would have been allowed, and it would have
obviated the said technical criticism.

The following instruction is also criticised by appellant:
"No more in law than in morals can one wrong be justified
by another. A person is bound to conduct himself with rea-
sonable care and prudence toward even a wrongdoer, and if
he can so conduct himself, and does not, he is liable, if in-
jury is sustained by the other. Even if there was negligence
on the part of the plaintiff in some degree, yet if at the time
when the injury was committed it might have been avoided
by the defendant by the exercise of reasonable care and pru-
dence, and if the defendant was aware of that fact, then the
defendant is liable to the plaintiff for injuries so committed."
It is claimed that this is subject to the criticism made in *Ben-
nichsen* v. *Market St. Ry. Co.*, 149 Cal. 20, [84 Pac. 420],
wherein it is said: "The case, therefore, was tried upon the
theory that there was evidence to bring it within the cases
which hold that although the person injured put himself by
his own negligence in a place of danger, if the employees in
charge of the train discovered his danger in time to prevent
injury by the exercise of ordinary care, and did not do so,

then notwithstanding the contributory negligence of the injured person, he may recover. But there was no such evidence in the case. There is no pretense that the motorman saw the plaintiff at all at the time of the accident until after it had occurred; on the other hand, it is shown clearly that he did not.'' There is evidence in the case at bar, however from which the jury might have drawn the conclusion that plaintiff was seen by the motorman from the time he stepped out to signal the car until he was thrown down. Of course no one except the motorman himself, who was not called as a witness, could testify positively as to this fact, but the circumstantial evidence was sufficient to justify this inference. If there was any showing of the existence of the ''last chance'' to avoid the accident, then the giving of the instruction was not erroneous.

Other instructions are criticised on the same ground, but the objection is equally untenable.

As to the question of contributory negligence it was for the jury to determine. It cannot be said as a matter of law that by reason of his own negligence plaintiff is precluded from recovering. Even if the car was moving slowly it was not negligence *per se* to attempt to board it. It is a matter of common knowledge that this very thing is done hundreds of times daily in our large cities, and whether the act involves any peril or want of care must depend upon the particular circumstances of each case.

Among the instructions which fully and correctly covered every phase of the evidence is the following upon this branch of the case: ''Every-day observation and experience show that it is not necessarily negligent to attempt to board a moving street-car. Whether it is or not depends upon the circumstances of each case. While it might be negligence for a man to try to board a car running very rapidly, it might not be negligence to try to board the same car running very slowly. It might be negligence to try to board a moving car of one kind, but not so to try to board a moving car of a different kind. It might be negligence for one man to try to board a car moving at a given rate, but not so for another man to try to board the same car, at the same place, in the same manner and moving at the same rate. You are the judges of the question whether it was negligence for Nilson to try to board

the car in question in this case, and for that purpose are to take into consideration all the evidence in the case and all the circumstances surrounding him at that time.''

We find no prejudicial error in the record and the judgment and order are affirmed.

Hart, J., and Chipman, P. J., concurred.