[Crim. No. 491.    Third Appellate District.—August 5, 1920.]

## THE PEOPLE, Respondent, v. FRED HAMILTON, Appellant.

[1] CRIMINAL LAW—MURDER—CORPUS DELICTI — CIRCUMSTANTIAL EVIDENCE.—In a prosecution for murder, evidence that the alleged victim and her companion, whose body was also found, were last seen alive with the defendant on a certain night, and near the time of the homicide, that the defendant procured a rifle early next morning, that empty cartridge shells and the jacket of a bullet of the same caliber as this rifle were found near the body of such companion, that the latter's remains and those of the alleged victim were found substantially in the same place, and that a few days after the time of the homicide the defendant made the untrue statement that the alleged victim and her companion had gone away, is sufficient to establish the death of the alleged victim.

[2] ID.—EVIDENCE — CORPUS DELICTI — BURDEN OF PROOF — INSTRUCTIONS.—In this prosecution for murder, defendant's proposed instructions as to proof of *corpus delicti* and to the effect that each essential and independent fact in the chain or series of facts must be established to a moral certainty and beyond a reasonable doubt, etc., were sufficiently covered by the court's charge to the jury.

[3] ID. — DEGREE OF CRIME COMMITTED — FAVORABLE INSTRUCTION — LACK OF PREJUDICE.—In a prosecution for murder, where the evidence shows murder in the first degree, error in instructing the jury on the law of manslaughter is favorable and not prejudicial to the defendant; and the defendant cannot complain where the determination of his case was more favorable to him than the evidence warranted.

[4] ID. — JURY — PLACING IN CHARGE OF DISQUALIFIED SHERIFF — WAIVER OF OBJECTION.—On appeal from the judgment of conviction of manslaughter, in a prosecution for murder, the defendant cannot predicate error on the action of the trial court in placing the sheriff and one of his deputies in charge of the jury during their deliberations, after the court had taken evidence and found the sheriff disqualified and had appointed an elisor to summon such jurors as were required, where no objection whatever was made by the defendant in the trial court to the sheriff and his deputy being placed in charge of the jury.

---

1.   Character and sufficiency of circumstantial evidence on proof of *corpus delicti* in homicide, notes, 68 L. R. A. 57; 7 L. R. A. (N. S.) 181.

APPEAL from a judgment of the Superior Court of Plumas County. J. O. Moncur, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. D. McLaughlin for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

NICOL, P. J., *pro tem.*—The defendant, Fred Hamilton, was charged by an information filed in the superior court of Plumas County, on the twelfth day of August, 1919, with the murder of one Gussie Redhead, an Indian woman, on or about the twenty-seventh day of July, 1917, near Quincy, in said county of Plumas, and on the trial of the case the defendant was convicted of the crime of manslaughter, and judgment was pronounced thereon. This appeal is from the judgment and an order refusing to grant a new trial.

The principal point upon which defendant relies for a reversal is that the evidence is insufficient to prove the *corpus delicti;* that it fails to prove that any criminal violence had been used, and that the identity of the deceased was not sufficiently established.

It appears that on or about the twelfth day of April, 1919, two children while gathering wild flowers at a place called "Hospital Hill," about one and one-eighth of a mile from the town of Quincy and about one-quarter of a mile from the county hospital, at a point about one hundred yards from the county road between Quincy and Greenville, found two human skulls. They reported the find and the officers made an investigation and found the remains of two human beings. One of the skeletons was apparently that of a woman, the ribs being encased in a corset, while the other was apparently that of a male. These skeletons were near together, being about one hundred yards apart. There was a man's coat by the female skeleton, and an arm bone was still in one of the sleeves. It was a blue coat, with small white stripes. There were also found by the female skeleton a part of a shirt, underclothes, some lace, crochet, and a silver watch, and near the male skeleton were found some teeth, hair, a pocket-knife, and part of a vest, the

cloth of which was identical with the cloth of the coat by the remains of the female. At the trial the skeleton of the female was identified to be that of Gussie Redhead, and the skeleton of the male to be that of Henry Lee, an Indian. The defendant and the said Gussie Redhead had been for some time living together and in the early part of July, 1917, he was working on a ranch for one Hugh Seaman. During the time he was employed on this ranch he was absent at one period for two days, and on his return Mr. Seaman asked him where he had been, and he replied that he had been hunting for his wife, who had run away.

On the night of July 26, 1917, after a picture show in the town of Quincy, the said Gussie Redhead, Henry Lee, Noanie Hardgrave, Tom Hardgrave, Harry Beatty, and the defendant, Fred Hamilton, went together from the town of Quincy to a place on the road called by one of the witnesses "the pines," near the high school. They were drinking and during the time that they were there a violent quarrel ensued between the defendant and Gussie Redhead, and the language used by both of these parties, according to the evidence of the witness Harry Beatty, was very profane. That during this quarrel the defendant attempted to strike said Gussie Redhead and he said something to her about "trying to kill him." While at this place Gussie Redhead complained to Henry Lee about her being cold and asked him for his coat, which he gave her and she put the coat on and wore it. It was a blue coat with small white stripes and was of the same material as the vest then being worn by the said Henry Lee. As above stated, this coat was found by the remains of Gussie Redhead and a portion of the vest by the remains of Henry Lee. During the time these parties were at this particular place, Harry Beatty went to sleep among the pines. Afterward Tom and Noanie Hardgrave went to their home and Gussie Redhead, Henry Lee, and the defendant left and went in the direction of the town of Quincy. This was the last time Gussie Redhead and Henry Lee were seen alive. Beatty slept out in the pines until the next morning at about daylight. When he went there the evening before he had on his person a silver watch, which was missing when he awoke in the morning. He stated that "during the night there was someone came to me and put their arms around me and was talking to me,

but I couldn't understand what the person said.'' That he knew that the person was a woman by the voice. But he did not remember anything that she said. This silver watch was found lying on the inside of the coat by the remains of Gussie Redhead, rolled up in an old handkerchief, a piece of lace and crochet.

The next morning after this meeting on the road, at about daylight, the defendant called at the home of Mike Hedrick and borrowed a rifle, saying that he wanted to go hunting. The rifle was a 30-caliber Winchester, model 94. Hedrick also gave him six cartridges for the rifle. These cartridges were soft-pointed, with jackets. Two empty 30-30 cartridge shells (the same kind of cartridges as used in this rifle) were found near the remains of Henry Lee and near the body was also found a jacket from a bullet of a 30-30 cartridge. There was also found by Dr. Styan in the decomposed tissues still adhering to the spinal column of the remains of Henry Lee a similar jacket of a bullet, which jacket was lying against the vertebral column, against the twelfth dorsal vertebra.

The defendant, on the fourth day of July, 1918, in speaking to one Charley Redhead in reference to Henry Lee and Gussie Redhead, said: ''He camped out this side of hospital son-of-a-bitch Gussie and Henry Lee.'' He also in 1918, about a year before the trial, in talking to one Tom Epperson about Gussie Redhead, said that she was at Beckwith; that he had been so informed. On or about the first day of August, 1917, the defendant called at the ''Quincy Laundry'' and told a Mrs. G. Que that Henry Lee and Gussie had gone away. This statement was untrue.

In the note to *State* v. *Williams*, 78 Am. Dec. 253, it is said by the editor, after referring to the rule that direct and positive evidence is unnecessary to prove the *corpus delicti*, and the cases in support thereof, that: ''This rule is now clearly established, and it would be most unreasonable to always require direct and positive evidence. Crimes, especially those of the worst kind, are naturally committed at chosen times, in darkness and secrecy. Human tribunals must, therefore, act upon such indications as the circumstances of the case present or admit, or society must be broken up. The cases just cited show that the jury may

find a verdict .of guilty upon circumstantial evidence, and that the *corpus delicti* may be proved by such evidence, as well as any other part of the case, and that this rule applies in cases of murder and manslaughter, as well as in all other crimes. But a few courts have, by refined distinctions, qualified this doctrine slightly. Thus in New York it was laid down, in the first instance by a divided bench, that in murder, either the death, or the criminal agency producing it, must be proved by direct evidence; then the other may be proved by circumstantial evidence. (*Ruloff* v. *People,* 18 N. Y. 179.) The same thing was held as to the crime of murder or manslaughter in *People* v. *Bennett,* 48 N. Y. 137; but the court was divided. The better rule, however, is that either element of the *corpus delicti,* or both, may be proved by circumstantial evidence, and this is the one sustained by the weight of authority, as shown by the cases above cited. But circumstantial evidence should be acted upon with great caution, especially when the public anxiety for the detection of a great crime creates an unusual tendency to exaggerate facts and draw rash inferences (*Pitts* v. *State,* 43 Miss. 472); because of all the various sources of error, one of the most copious and fatal is an unreflecting faith in human testimony.''

In *State* v. *Williams,* 46 Or. 287, [80 Pac. 655], the supreme court of Oregon, in approving this rule as above stated, said: ''To the doctrine of these cases and the rule thus stated we give our assent. The strict rule contended for by defendant would operate completely to shield a criminal from punishment for the most atrocious crime, and afford him absolute immunity if he were cunning enough to consume or destroy the body of his victim by fire or some chemical agency, or completely hide it away or otherwise destroy its identity, although the proof of his guilt might be of the most clear and convincing kind, and remove all possible doubt in the premises. The death of the person alleged to have been killed is a distinct ingredient in the case of the prosecution for murder or manslaughter, and must be established by direct testimony or presumptive evidence of the most cogent and irresistible kind. Great care in such a case should always be observed in acting upon presumptive or circumstantial evidence. No conviction should be had or allowed to stand on mere suspicion or conjecture

alone . . . Where, as here, the entire circumstances point with one accord to the death of the person alleged to have been murdered, the finding of fragments of a human body or of metallic articles which are positively identified as part of the body of the alleged victim, or as articles worn by him, will be sufficient, if believed by the jury, to establish the fact of death, when this is the best evidence that can be obtained under the circumstances. (*People* v. *Alviso,* 55 Cal. 230; *McCulloch* v. *State,* 48 Ind. 109; *Commonwealth* v. *Webster,* 5 Cush. (Mass.) 295, [52 Am. Dec. 711]; *State* v. *Williams,* 52 N. C. 446, [78 Am. Dec. 248]; *Gray* v. *Commonwealth,* 101 Pa. St. 380, [47 Am. Rep. 733].)''

In *People* v. *Alviso,* 55 Cal. 230, the point was made by the defendants that the *corpus delicti* was not shown; that the body of deceased not having been discovered, an essential fact in any charge of murder, viz., death, has not been established. In establishing a charge of murder, two facts are essential to a conviction, viz., the death of the alleged victim and the existence of criminal agency as the cause. The court, in answer to this contention of the defendants said: ''It is very seldom that a conviction occurs without positive proof of the former, either by eye-witnesses of the homicide, or the subsequent discovery of the body; and while the general rule is clearly laid down, yet the authorities concede that there may be exceptions. Thus, Wharton, in his work on Homicide, section 637, relates instances of the human body being disposed of by fire, or boiled in potash, or dissolved by acids, rendering it impossible that it should ever be produced;'' and concludes: ''It is clear that in such cases the *corpus delicti* may be proved circumstantially or inferentially.''

In this case of *People* v. *Alviso,* the body of the deceased had been burned in a fire and in the ashes were found a few pieces of bones, ''too small to be identified as human bones.'' But the other circumstances of the case were of a convincing character.

In the case of *Mary Ann Nash,* 6 English Crim. App. Rep. 225, it was held that a jury is entitled to infer that there has been a violent death from circumstantial evidence. In that case Mary Ann Nash was convicted on June 1, 1911, of the murder of her illegitimate son, and sentenced to death. The child was five years and nine months old on June 27, 1907,

the date of its murder. The body was discovered by two workmen in a well in April, 1908. The features were unrecognizable and decomposition was very far advanced. There wa's no' evidence as to sex except from the general appearance and dress. . . . She appealed from the conviction, and Lord Alverstone, the Lord Chief Justice, in deciding the case, said: "It has been submitted that there was not sufficient evidence to go to the jury (1) of the identity of the body, and (2) of unlawful killing. As to the identity, counsel was no doubt right in admitting at the trial that there was some evidence; his argument must be that it was not sufficient to justify the jury in convicting. The facts which are undisputed (because appellant did not give or call any evidence), are that on the morning of the 27th of June, 1907, the appellant left with her child, saying that she was going to Mrs. Hillier's; that she would pass near the well where the body was found, and that a woman was seen there with the child on a day about that time. Alone those facts. might not be sufficient, but she left with the child in perfect health, and when she returned she said she had left it with Mrs. Hillier; she packed up its clothes and said she had sent them to her, and later she said the child was well. All these statements were untrue. . . . It is said that there is no evidence of violent death, but we cannot accept that. Counsel cannot have meant that there must be proof from the body itself of a violent death. His argument means that on the whole evidence the possibility is left so open that it was not safe to leave it to the jury. . . . In view of the facts that the child left home well and was afterward found dead, that the appellant was last seen with it, and made untrue statements about it, this is not a case which could have been withdrawn from the jury."

[1] In the case at bar the facts that Gussie Redhead and Henry Lee were last seen alive with the defendant on the night of July 26, 1917, and near the time of the homicide, and that the defendant procured a rifle early next morning, and the finding of empty cartridge shells and the jacket of a bullet, of the same caliber as this rifle, near the body of Henry Lee; and the finding of a similar jacket of a bullet in his body, and that the remains of the said Henry Lee and Gussie Redhead were found substantially in the same place, and the untrue statement made by defendant

on or about August 1, 1917, as to their going away, are facts that in our opinion are sufficient to establish the death of the alleged victim within the rules of law above referred to.

It is contended that the court erred in the admission of evidence. We have carefully examined the objections and we find no error in any of the court's rulings.

[2]  Complaint is made of the trial court's refusal to give certain instructions requested by the defendant. The instruction: "That as a prerequisite to the conviction of any person charged with the commission of a crime, it must be established that a crime of the character charged against him or a crime of inferior grade necessarily included therein has in fact been committed, etc.," was sufficiently covered by the instructions of the court given elsewhere.

The proposed instruction as to reasonable doubt was given in the court's charge to the jury, and the proposed instruction to the effect that each essential and independent fact in the chain or series of facts must be established to a moral certainty and beyond a reasonable doubt, etc., was in our opinion covered by the instructions by the court. Thus the jury was told: "That when the evidence against the defendant is made up wholly of a chain of circumstances, and there is a doubt as to one of the facts essential to establish guilt, it is the duty of the jury to acquit. That in order to convict the defendant upon evidence of circumstances, it is necessary, not only that all the circumstances concur to show that he committed the crime charged, but that they are inconsistent with any other rational conclusion. It is not sufficient that the circumstances proved coincide with, account for, and therefore render probable, the hypothesis sought to be established by the prosecution, but they must exclude to a moral certainty every other hypothesis but the one of guilt; or the jury must find the defendant not guilty." The jury was also instructed: "That defendant's plea of not guilty puts in issue every material allegation of the information, and places the burden upon, and makes it the duty of the prosecution, before a conviction can be had, to establish to your satisfaction, to a moral certainty and beyond a reasonable doubt, by legal and competent evidence, each and every material fact essential to a conviction."

[3] Appellant claims that it was error for the court to instruct the jury: "That under the information in this case the jury may, if the evidence warrants it, find the defendant guilty of . . . manslaughter." He argues that "there is no evidence of manslaughter, it was murder in the first degree or it was nothing." But the appellant cannot complain of the giving of this instruction as it was in his favor as tending to reduce the charge against him. In a prosecution for murder, where the evidence shows murder in the first degree, error in instructing the jury on the law of manslaughter is favorable and not prejudicial to the defendant. (*People* v. *Tugwell,* 32 Cal. App. 520, [163 Pac. 508].) "The doctrine is well settled by this court that a defendant cannot complain where the determination of his case was more favorable to him than the evidence warranted." (*People* v. *Muhlner,* 115 Cal. 303, [47 Pac. 128]; *People* v. *Barnhart,* 59 Cal. 381; *People* v. *Maroney,* 109 Cal. 277, [41 Pac. 1097]; *People* v. *Lowen,* 109 Cal. 381, [42 Pac. 32].)

Criticisms are made to other instructions given to the jury, but we find these criticisms to be without merit. The jury was very fully and fairly instructed by the court and we find no material error in the instructions.

[4] It is lastly contended that the court committed error in placing the sheriff and one of his deputies in charge of the jury during their deliberations. In order to obtain a jury to try this case it became necessary to order a special venire. The court took evidence and determined that both the sheriff and the coroner were disqualified, and an order was duly made appointing an elisor to summon such jurors as were required. When the case was about to be submitted, the sheriff and one of his deputies were sworn and the jury were placed in their charge during their deliberations. There was no objection whatever made by defendant to this proceeding.

In the case of *People* v. *Fellows,* 122 Cal. 233, [54 Pac. 830], it was held that a sheriff who was disqualified to summon a jury should not be entrusted with the charge of the jury when retiring to deliberate upon their verdict. In that case the sheriff was shown to be disqualified, and when the time came for the jury to retire to deliberate upon its verdict, the said sheriff, over defendant's objection and exception, was given charge of it. This was held to be error.

But in the case at bar when it came time for the jury to retire to deliberate upon its verdict, no objection whatever was made by the defendant to the sheriff and his deputy being placed in charge of the jury. Not having objected to the proceeding at the proper time, he cannot now be heard to complain that there was any error in such proceeding.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.