[Civ. No. 2430. Third Appellate District.—April 27, 1922.]

GUY RILEY, Respondent, v. JAMES C. DAVIS, as Director-General of Railroads, etc., Appellant.

[1] DISQUALIFICATION OF SUMMONING OFFICER — RULES GOVERNING.— The same rules govern the disqualification of a juror and the summoning officer, the theory of the law being that a biased and prejudiced officer will select biased and prejudiced jurors.

[2] ID.—SHERIFF AS WITNESS—DISQUALIFICATION TO SUMMON JURY.— In an action for damages for personal injuries sustained while attempting to board an electric train, the sheriff is not disqualified to summon the jury to try the case by reason of the fact that subsequent to the accident he made certain observations with respect to the speed of the cars and powers of observation of operatives and others upon said cars at the point where the accident happened, as to results of which observations he is permitted without objection to testify at the trial, where he had no knowledge of any of the material facts connected with the accident and had not been informed, except in a very general way, of the nature of the case, and the trial judge is warranted in believing that he had neither formed nor expressed any opinion as to the merits of the action and that he entertained neither prejudice nor enmity against either party.

[3] ID. — KNOWLEDGE OF DISQUALIFICATION—WAIVER OF OBJECTION.— In such an action, where the facts constituting the supposed disqualification of the sheriff to summon the jury to try the case became known to the defendant a day before the conclusion of the trial, but he did not immediately seek to arrest the proceedings but chose to take his chances upon receiving a favorable verdict, he could not take advantage of that objection after the case had gone against him.

[4] ID.—SUMMONING OF VENIREMEN BY DEPUTIES—ABSENCE OF PREJUDICE.—Under section 4½ of article VI of the state constitution, disqualification of the sheriff to summon the jury to try a case,

even though timely objection is made and overruled, will not justify the reversal of a verdict and judgment thereon, where the special veniremen were summoned by deputy sheriffs without consulting the sheriff, who had no voice in the manner of selection or in naming the persons to be selected, and the manner of their selection and summoning was such that no prejudice could have been caused by the error.

[5] ID.—SUMMONING OF JURY—LEGISLATIVE CONTROL—WAIVER OF BENEFIT.—The manner and method of summoning a jury is a subject matter of legislative control rather than of constitutional provision, the benefit of which may be waived.

[6] NEGLIGENCE—ACTION FOR DAMAGES FOR PERSONAL INJURIES—EXCESSIVE VERDICT—PASSION AND PREJUDICE—REMISSION OF EXCESS—NEW TRIAL.—The finding of the trial court that the verdict of the jury was excessive and not justified by the evidence and that "the excessive amount of the verdict was the result of passion and prejudice on the part of the jury" did not constitute a finding that the whole verdict was tainted with passion and prejudice, but only that as to the amount of the excess the verdict was not supported by the evidence, and to that extent only it might be said to be the result of passion or prejudice, and under such circumstances the trial court was not required to grant defendant's motion for a new trial but it was within its discretion to deny such motion, conditioned upon the plaintiff's remission of the excess.

[7] ID.—ATTEMPT TO BOARD MOVING TRAIN—EXERCISE OF REASONABLE CARE — INSTRUCTIONS. — The court having given the portion of a requested instruction with reference to right of plaintiff to recover in case his injuries were received while attempting to board a moving train and in case he did not exercise reasonable care and caution for his own safety, it did not commit error in omitting the remainder of such instruction which added nothing to the instructions already given, which was argumentative and which suggested a state of facts contrary to the evidence.

[8] ID.—CONTRIBUTORY NEGLIGENCE OF PLAINTIFF—BURDEN OF PROOF—INSTRUCTIONS.—In an action for damages for personal injuries it is not error to strike from an instruction proposed by the defendant a portion thereof which puts upon plaintiff the burden of proving not only that the negligence of defendant contributed to the injury but that plaintiff was free from contributing negligence. The duty is cast upon defendant to prove contributing negligence and the plaintiff is not required to anticipate such defense.

7. Status as passenger of one who attempts to board moving car or train, notes, Ann. Cas. 1917C, 1206; L. R. A. 1916B, 832.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert and Power & McFadzean for Appellant.

Russell & Heid and Farnsworth, McClure & Burke for Respondent.

BURNETT, J.—At Vine Street station in the city of Berkeley, while attempting at night on May 5, 1919, to board an electric train operated by appellant, plaintiff was seriously injured, and the appeal is from a judgment in his favor for the sum of forty-one thousand two hundred dollars. No objection is made to the sufficiency of the complaint, nor do we understand it to be seriously disputed that the evidence supports the verdict. However, that the peculiar feature of the case may be portrayed we quote the following from the testimony of plaintiff:

"We [referring to a Miss Paiva and himself] took the street-car down to the ferry building in San Francisco and took the ferry-boat between 11 o'clock and 12 o'clock and we ferried across the bay. At the Oakland mole we took the Southern Pacific train and got off at Vine Street station. We didn't know just exactly when the train came back, but we did know that was the last train I could go back on. Miss Paiva lived a distance of about four or five blocks from this station, so we decided to sit there and wait for this train to go back. . . . We went over to the side of the station and sat down and waited for this train to come back because it was the last train I could get to San Francisco. It wasn't very long until it came back and I immediately, when I saw the train coming around the curve here [indicating on the diagram], got up from my seat and walked straight out to the first track and waited for it to come on. When I saw this train coming around the curve it was coming at a pretty good rate of speed. I walked straight out from this seat here to the first track and stood there and the train was still coming on. It wasn't slowing down very much and I stood there for a second and walked over to the second track. I didn't get

clear over to the second track, but in about halfway be-
tween the two tracks and the train was going at a speed
that I didn't think it would stop where I expected it to
right opposite the seat, so I turned and walked diagonally
out there south, thinking that the train would go a little
past my expectation and I would be that much further
ahead. I got down there and walked right on down to the
train, and I got just ahead about to it and the train
stopped, and I took and grasped the rear handle of the
left-hand gate of the first car going toward San Francisco,
and the train was stopped, and I grasped the handle, and
it was still stopped when I stepped my left foot up on the
lower step. As I did that, the train started, it just stopped
a second, and threw my feet both to the ground. Then I
was trying to get my balance, but in doing that I was half
dragged and half ran along the side of the train still
holding the handle with my right hand and I must have
gone that way fifteen or twenty feet, or may be further,
trying to get up speed. I thought when I could get enough
speed pushing I would throw my feet out and swing up
around on this step and when I thought I reached that
rate of speed I swung, and instead of my feet going on the
step, they were swung back between the step and they
lodged in the mechanism of the second car, the car behind
the one I was trying to get on. And when I was gradually
being dragged under the car and such pressure being
brought on my hands, in time I would have to let go, and
slip right back under the car. Instead of waiting for that
I swung my whole body and arms away from the rail I
was holding to and dropped. As I dropped, my feet were
caught and held so they didn't swing clear of the track
and when I dropped both trucks of the last car ran over
my feet and limbs. The gates on the last car were shut,
so I walked immediately right down to the car ahead of it.
That was the rear end of the first car and the gate on my
side was open and the train stopped still. . . . Just as I
stepped with my left foot the train jerked out, and jerked
my foot off and I fell to the pavement. Just the start of
the train jerked my foot off, and I lost my balance.''

His testimony was substantially corroborated by that of
Miss Mary Paiva, who witnessed the accident, and there
is no doubt that a case is thus presented against appellant

within the undisputed and well-established principle of liability of common carriers for the safety of their passengers. (10 Corpus Juris, 948; *Nilson* v. *Oakland Traction Co.*, 10 Cal. App. 103 [101 Pac. 413]; *Franklin* v. *Visalia Electric Ry. Co.*, 21 Cal. App. 270 [131 Pac. 776]; *Raub* v. *Los Angeles T. Ry. Co.*, 103 Cal. 473 [37 Pac. 374]; *Boone* v. *Oakland Transit Co.*, 139 Cal. 490 [73 Pac. 243]; *Cody* v. *Market St. Ry. Co.*, 148 Cal. 90 [82 Pac. 666].)

In the light of plaintiff's testimony we must, of course, regard him as a passenger and entitled to the highest degree of care on the part of defendant. This conclusion is in accordance with the definition of a passenger contained in an instruction to the jury given by the court on request of defendant as follows:

"A passenger is one who undertakes, with the consent of the carrier, to travel in a conveyance furnished by the carrier otherwise than in the service of the carrier, as such. The relation of carrier and passenger depends upon a contract of carriage, expressed or implied, between the carrier and the passenger, made by themselves, or their respective agents. The relation begins when the person puts himself in the care of the carrier, or directly within the carrier's control, with the *bona fide* intention of becoming a passenger, and is accepted as such by the carrier."

But, as before stated, there seems to be no serious controversy between the parties as to this feature of the case. Indeed, at the oral argument, while not waiving any of the points made in the briefs the learned counsel for appellant confined himself to a discussion of two considerations which he deemed of sufficient importance to merit the careful attention of the court.

The first of these relates to the supposed disqualification of the sheriff of Tulare County to summon the jury which tried the case. It seems that on June 27, 1920, more than a year after the accident happened, said sheriff, Court Smith, delivered some prisoners to the state penitentiary at San Quentin, and on his return went to San Francisco to attend the National Democratic Convention that was then in session. While there he met two of respondent's attorneys and at their request, on the evening of June 29, 1920, he accompanied them to said Vine Street station in Berkeley

57 Cal. App.—31

where he made certain observations with respect to the speed of the cars and powers of observation of operatives and others upon said cars. At the trial, in rebuttal, Mr. Smith testified, without objection, to the results of these observations. He completed his testimony on the afternoon of the day preceding the submission of the case to the jury and immediately thereafter a recess was taken at which time counsel for appellant claim that they learned for the first time the facts that constituted the disqualification of the sheriff. No suggestion, however, of such asserted disqualification was made to the trial court until the argument of the motion for a new trial. At said hearing affidavits were presented by both parties, and wherein there is any conflict as to the facts we must, of course, be controlled by the showing in favor of respondent. In his affidavit the sheriff deposed:

"That while at said Vine Street station he was requested by said Messrs. Russell & Heid to make certain observations and inform them the result thereof, the exact nature and extent of which more fully appears from affiant's testimony as given at the trial of the above-entitled action; that said Messrs. Russell & Heid did not discuss with affiant the merits of the plaintiff's contention, or the defendant's defense in the above-entitled action other than to state to him in a general way their understanding of how an accident occurred wherein one Guy Riley, the plaintiff in said action, was injured; that after making said observations and informing said Messrs. Russell & Heid the result thereof affiant returned to San Francisco and paid no further attention to said case until he was called as a witness to testify therein on behalf of the plaintiff.

"That affiant was not familiar or acquainted with, either on the eighth day of July, 1920, when said special venire was issued and said jury summoned as aforesaid, or on the ninth day of July when he testified as a witness in said case, or at any other time, the merits of the plaintiff's claim, or of the defendants' defense, and did not entertain any opinion or conclusion with respect thereto and, particularly, he did not entertain any opinion or conclusion that the plaintiff should recover any damages in said case. Affiant further states the fact to be that he was not ac-

quainted with and did not even know Guy Riley, the plaintiff in said action, by sight or otherwise.''

After denying that he made certain purported statements to appellant's counsel he proceeded:

''Affiant states the fact to be positively and absolutely that he did not state to W. I. Gilbert, E. L. Barnes, or any other person, or persons, at any time, that plaintiff ought to recover in said case, and affiant further states that he made no statement and used no words of similar import, or that could be construed to have that meaning.

''Affiant further states that he did not at any time said jurors were so summoned, or at the time of the trial of said case, or at any other time, have an unqualified or other opinion or belief as to the merits of the action, either founded upon knowledge of its material facts, or some of them, or otherwise; and further that there was not a state of mind in affiant evincing either enmity against or bias to either party.''

There were other affidavits lending support to the contention of respondent that there was no legal disqualification on the part of the sheriff, but it is entirely unnecessary to go further to show a complete justification for the court's ruling.

[1] It is not disputed that the same rules govern the disqualification of a juror and the summoning officer, the theory of the law being that a biased and prejudicial officer will select biased and prejudiced jurors. (*People* v. *Le Doux*, 155 Cal. 535 [102 Pac. 517].)

The disqualification, if any, therefore, in the present case must fall within the specification of subdivision 6 of section 602 of the Code of Civil Procedure as follows: ''Having an unqualified opinion or belief as to the merits of the action founded upon knowledge of its material facts or some of them.''

The leading case upon the question, as it deals with criminal cases, is *People* v. *Reynolds*, 16 Cal. 129, wherein is discussed with great learning the character of the opinion that will disqualify a juror for implied bias. It was said that the statute implies ''that, to exclude the juror, he must have a settled conviction of the guilt or innocence of the party, or has expressed such a conviction. . . . A mere suspicion or inclination of the mind toward a conclusion is

not enough, the state of mind must be more decided. He must have reached a conclusion like that upon which he would be willing to act in ordinary matters. In other words, we repeat, the effect upon his mind must be more than an impression; it must amount to a conviction, in order to exclude him for implied bias.'' This decision was approved in *People* v. *Symonds,* 22 Cal. 349, and subsequent cases, but as the principle is undisputed we need cite no further. Manifestly, the rule would be no more strictly applied in civil than in criminal cases and, as thus applied, it is quite apparent that no serious objection could be made to the qualification of the sheriff. [2] According to his affidavit he had no knowledge of any of the material facts connected with the accident nor had he been informed, except in a very general way, of the nature of the case. The trial judge was therefore warranted in believing his verified statement that he had neither formed nor expressed any opinion as to the merits of the action, and that he entertained neither prejudice nor enmity against either party.

It cannot be disputed that the question of the disqualification of the sheriff was one in the first instance for the trial judge to determine, and the showing was not such as to compel a finding in favor of appellant's contention. (*Graybill* v. *De Young,* 146 Cal. 421 [80 Pac. 618].)

Of course it will not be argued that the mere fact that the sheriff testified as to some matters that might be considered of importance by the jury would disqualify him within the contemplation of the statute. This would be a strained and unreasonable construction of the law and would tend to interfere greatly with the practical administration of justice.

The Le Doux case, *supra,* was entirely different, for therein it appeared that the sheriff ''had an unqualified opinion of the guilt of the defendant, based upon his own activity in gathering evidence for the prosecution and founded upon his direct investigation of the facts.''

[3] Moreover, it is equally plain that if any disqualification existed, it was waived by the failure of appellant to make timely objection. As before stated, appellant became aware of the supposed disqualification a day before the conclusion of the trial, and there is no reason shown

why he did not immediately seek to arrest the proceedings. He chose, however, to take his chances upon receiving a favorable verdict; and in such cases the just and well-established rule is, that, after the case goes against him, he cannot object to the validity of the verdict because of circumstances within his knowledge which he has declined to seasonably urge.

The principle is clearly stated in 24 Cyc. 316, from which we quote:

"It is well settled that a failure to challenge or object operates as a conclusive waiver if the ground of objection is known to the party at the time the jury is impaneled, is discovered during the progress of the trial, if he has knowledge of facts sufficient to put him upon inquiry, or is otherwise chargeable with knowledge of the ground of objection."

Many cases are cited by respondent illustrating this doctrine in various phases, of which we may mention the following: *People* v. *Hamilton,* 49 Cal. App. 30 [192 Pac. 467]; *Monaghan* v. *Rolling Mill Co.,* 81 Cal. 190 [22 Pac. 590]; *Ipswitch* v. *Fernandez,* 84 Cal. 639 [24 Pac. 298]; *People* v. *Ah Le Doon,* 97 Cal. 171 [31 Pac. 933]; *Sherwin* v. *Southern Pac. Co.,* 168 Cal. 722 [145 Pac. 92].

The authorities, indeed, seem to be uniform that a known cause of challenge is waived by withholding it until after verdict, "since such practice is incompatible with good faith and fair dealing which should characterize the administration of justice."

[4] Again, if it be conceded for the sake of argument that the sheriff was disqualified and that timely objection was made, what answer is there to the contention of respondent that no prejudice resulted to appellant? The special veniremen were summoned by deputy sheriffs without consulting the sheriff who had no voice in the manner of selection or in naming the persons to be selected, and the jurors selected were fairly and impartially chosen from the citizens of Tulare County by persons entirely unbiased and unprejudiced and who knew nothing whatever about the facts of the case. In other words, the jurors were summoned in exactly the same way, and we must assume that persons of the same type and qualifications were obtained as though the coroner or an elisor

had served the process. While, therefore, if the sheriff was disqualified, the disqualification would *technically* affect his deputies, it would not follow that the error was prejudicial. In fact, in view of the showing made on the hearing of the motion for a new trial, we can safely say that, if any error was committed, the case is one for the application of section 4½ of article VI of the state constitution.

[5] As to the contention of appellant that the question involves a constitutional right which cannot be reached by said section 4½ it is sufficient to quote the following: "The manner and method of summoning a jury is a subject matter of legislative control rather than of constitutional provision, . . . the benefit of which may be waived." (*People* v. *Nakis,* 184 Cal. 105 [193 Pac. 92].) But even if it were a constitutional right that was invaded and it appeared from an examination of the record that there was no "miscarriage of justice," the error should be disregarded on appeal. (*People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042].)

It may be added, as pointed out by respondent, that when the trial was completed and the jury were about to retire to deliberate upon their verdict, the sheriff was sworn to take charge of them and no objection whatever was made to the proceeding. This constituted not only a waiver but evidence that appellant was satisfied that he had suffered no prejudice by reason of the alleged irregularity.

[6] The other point emphasized at the oral argument is, in our judgment, also entirely without merit. It is based upon the opinion of the trial judge expressed in determining the motion for a new trial as follows: "1. That the amount of the verdict rendered by the jury was and is excessive and in that respect was not justified by the evidence. 2. That the excessive amount of the verdict was the result of passion and prejudice on the part of the jury." It was further stated that the amount of the verdict was greatly in excess of any verdict allowed to stand in any of the courts of this country for a similar injury and the court concluded that twenty thousand dollars should be remitted or else a new trial granted. Respondent consented to the reduction, whereupon the court denied the motion for a new trial, reciting that "judgment in favor of plaintiff and against defendant in the said sum of forty-one

thousand two hundred dollars and costs is supported by the evidence.'' It is not disputed that it was within the discretion of the trial court to make such conditional order, but it seems to be the claim of appellant that, in the opinion of the trial judge, the whole of the verdict was tainted with passion and prejudice and therefore it was his duty to set it aside and grant the motion for a new trial. This view would rather imply a serious reflection upon the good faith of the trial judge, although we are satisfied that no such charge was contemplated by the capable and courteous counsel who argued the cause. The record shows conclusively that by the use of said terms the court simply meant that to the extent of twenty thousand dollars the verdict was not supported by the evidence, and to that extent only it might be said to be the result of passion or prejudice. If the trial judge had believed that the whole of the verdict was the product of passion or prejudice, he would not have recited in the order that the balance was supported by the evidence, and he would, of course, have set the verdict aside.

Indeed, in the use of said expressions the trial judge probably had in view the decisions holding that said language is in legal contemplation equivalent to a declaration that the amount of the verdict is not supported by the evidence. In *Kinsey* v. *Wallace*, 36 Cal. 462, the supreme court declared ''that a verdict for a sum so greatly disproportionate to the actual damage of the plaintiff, under the facts of the case, is of itself sufficient evidence that it was rendered under the influence of passion or prejudice,'' but this circumstance was not deemed sufficient to vitiate the entire verdict, as the supreme court made a conditional order allowing the plaintiff the privilege of remitting a part of it with the alternative of a reversal of the judgment.

In *Doolin* v. *Omnibus Cable Co.*, 125 Cal. 141 [57 Pac. 774], it is said: ''To say that verdict for damages was enhanced by passion or prejudice is one mode of saying that the evidence did not justify it; and the only means of discovering therein the element of passion or prejudice, within the meaning of the statute, is by comparing the amount with the evidence which was before the court at the trial. (*Harrison* v. *Sutter Street Ry. Co.*, 116 Cal. 156

[47 Pac. 1019].) Whatever may be the rule which should govern the trial judge, it is certain that when his action in granting a new trial on the ground of excessive damages, or requiring a reduction of the amount as the condition of denying one, comes to be reviewed on appeal, his order will not be reversed unless it plainly appears that he abused his discretion; and the cases teach that when there is material conflict of evidence regarding the extent of damages the imputation of such abuse is repelled, the same as if the ground of the order were insufficiency of the evidence to justify the verdict.''

It may be added that appellant expressly admits that the amount of the verdict as allowed by the trial judge is not at all disproportionate to the extent of the injury suffered by plaintiff, and this admission virtually nullifies the force of his criticism of said action of the trial judge.

The other objections urged in the briefs deserve, we think, but scant consideration.

Appellant, while intimating that instruction No. 7 as given by the court is erroneous, has not attempted to point out any error, and we might therefore disregard the suggestion. It embodies, we may add, however, a generally accepted principle of liability on the part of common carriers for the safety of one attempting, without fault on his part, to board a train, and was undoubtedly applicable to the facts as related by plaintiff.

Appellant is mistaken in the claim that the court instructed the jury that ''from the time the plaintiff in this case went upon the cement platform adjacent to Vine Street station, as it is called, he was to be considered a passenger and that the defendant was in duty bound to use the utmost care and caution for his protection.'' We think no such inference can be fairly drawn from the consideration of the various instructions upon the subject which were given by the court. We are satisfied the jury must have understood the law to be as admitted by appellant that a person ''does not become the object of the utmost care of the railroad company until he actually starts to make his entry upon the train.'' Indeed, it is made to appear clearly by the various instructions of the court that the utmost care was required of appellant only in case plaintiff was a passenger and there was a specific direction that ''plaintiff

in this case was not a passenger and cannot be considered by you as such while the train mentioned in the pleadings was standing at Vine Street station, unless plaintiff in the exercise of reasonable care and prudence on his part, was actually attempting to board defendant's said train, or was so near to said train, and in such a position as to indicate his intention so to board the same," etc. It is not at all probable that the jury was misled as to this feature of the case

Moreover, if any error was committed in that respect, it was entirely without prejudice for the reason that there was no evidence or no contention that any act of appellant contributed to the injury except the negligence in starting the train while plaintiff was attempting to board it. The care required of appellant toward plaintiff while he was sitting or standing on the platform was entirely foreign to the issues and could not have been regarded by the jury. There were only two theories presented by the pleadings and the evidence. The one urged by plaintiff which we have already indicated and the other by appellant that plaintiff attempted to board the train while it was in motion and while the gates were shut, and the jury were instructed with great particularity and precision as to the law applicable to each of these theories. There was no room for confusion or misunderstanding as to what was required of each party upon either hypothesis.

[7] Appellant complains because the trial court omitted from a requested instruction the following:

"This statement holds true, whether the train stopped for a sufficient or reasonable time at Vine Street station to allow passengers to board the same, or not, because if the stop made at Vine Street station was unreasonably short, or if said train did not stop at Vine Street station at all, the plaintiff would not have been justified in attempting to board it while it was traveling at a dangerously high rate of speed, or while the gates were closed regardless of the rate of speed at which it was traveling or whether it was moving at all or not."

It is perfectly apparent that this clause added nothing to the portion of the proposed instruction which was given by the court as follows:

"If the car or train described in the complaint had started away from Vine Street station, and if the plaintiff seeing that it had started, ran after it and attempted to board it, while it was in motion, and was injured because of the rate of speed at which said train was traveling, or if plaintiff attempted to board said train when the gates thereof were closed regardless of the rate of speed at which it was traveling, or whether the train had started at all or not, in either event, he, [the plaintiff] did not exercise and was not exercising that reasonable care and caution which he should have exercised in protecting himself from injury, and such failure to so exercise reasonable care and caution for his own safety was the direct and proximate cause of the injury he received and plaintiff cannot recover."

Besides, these various contingencies were specifically covered by other instructions given by the court and the rejected clause was also argumentative, and misleading by reason of the suggestion that the train might not have stopped at said station, whereas the evidence all showed to the contrary.

[8] There was no error in striking from defendant's proposed instruction No. 21, the phrase, "unmixed with any negligence on his own part, contributing directly and proximately to such injury." The instruction as proposed put upon plaintiff the burden of proving not only that the negligence of defendant contributed to the injury but that he was free from contributing negligence; whereas the law is well settled that the duty is cast upon defendant to prove such contributing negligence and the plaintiff is not required to anticipate such defense. Besides, this identical phrase is contained in a similar instruction, No. 17, given by the court on plaintiff's request. It was more favorable to appellant than he had a right to expect, but of this he cannot complain.

It is entirely a misapprehension of the situation to say that the issue of contributory negligence was eliminated from the case by the instructions of the court. In many of the hypothetical instructions given at the request of plaintiff the modification, "without plaintiff's fault," was introduced by the court, and on appellant's request the doctrine was fully presented. It is sufficient to quote the following:

"If it should appear to you from the evidence that the plaintiff in this case neglected those precautions for his own safety indicated in and required by these instructions and you should further find that said conduct directly or proximately contributed to his injury, you must find in favor of the defendant, even though you may believe that the employees of the train were guilty of negligence while engaged in operating said train."

We fail to see any contradiction in any material respect in the instructions. As we have stated, they presented the law applicable to the different theories of the parties. It was the duty of the court to so instruct the jury leaving it to them to determine which theory was in consonance with the facts. There was no invasion of the province of the jury, but there would be cause for complaint if the court had failed to accommodate and adapt the instructions to any rational inference that might be derived from the evidence.

The fact is, that a careful examination of the record justifies the statement that the case was tried with extraordinary care, the rights of both parties were apparently guarded with scrupulous concern, and we have not been able to discern any error in the proceedings from beginning to end.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1922.

All the Justices concurred.

Shurtleff, J., was absent and Richards, J., *pro tem.*, was acting.