COLBURN, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*May 5—October 5, 1915.*

*Railroads: Injury to passenger: Suitcase falling from rack: Negligence: Burden of proof.*

To entitle a passenger to recover from a railway company for injuries caused by a suitcase falling upon him from the rack above where he was sitting, he must show by a preponderance of the evidence that the suitcase had been in the rack for such a length of time that in the exercise of ordinary care the company's employees should have discovered and removed it.

APPEAL from a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Reversed.*

Plaintiff brought this action in the municipal court of Brown county to recover damages for injuries alleged to have been sustained while riding as a passenger on one of defendant's passenger trains between Escanaba, Michigan, and Oconto, Wisconsin.    The complaint alleged that plaintiff had been on the train about two hours, occupying a seat in the coach commonly known as the "smoker;" that as the train was approaching the city of Oconto a trunk or large suitcase fell upon him from the rack directly above the seat in which he sat, striking him in the abdomen.    The complaint further alleged that the suitcase was in the rack when plaintiff entered the seat at Escanaba, and that the defendant was negligent in permitting so large an article to be placed in the rack and in allowing it to remain there for so long a time without discovering and removing it and in failing to warn the plaintiff of the danger incident thereto.    The answer was a general denial.    The jury returned the following special verdict:

"(1) Was the plaintiff on the 30th day of March, 1914, while riding on one of defendant's trains, struck and injured by a valise falling from the parcel rack?    A. Yes.

"(2) If you answer question No. 1 'Yes,' how long had said valise been in the parcel rack before it fell?    A. Don't know.

"(3) Was said valise of such size and shape that it was apparent that it could not be safely carried in said parcel rack?    A. Yes.

"(4) If you answer question No. 3 'Yes,' then did the conductor or brakeman, or either of them, know that said valise was in the parcel rack for a sufficient time before it fell, so as to be able to remove it?    A. No.

"(5) Ought said conductor or said brakeman, or either of them, in the exercise of ordinary care, to have discovered the presence of the valise in the parcel rack in sufficient time to have removed it before it fell?    A. Yes.

"(6) Was the said conductor or said brakeman, or either of them, guilty of any want of ordinary care in failing to remove the valise from the parcel rack before it fell?    A. Yes.

"(7) If you answer question No. 3 'Yes,' that said grip

was of such apparent size and shape that it could not be safely carried in said parcel rack, then was plaintiff guilty of any want of ordinary care in failing to see said valise in the parcel rack and remove the same before it fell? *A.* No.

"(8) If the court is of the opinion that the plaintiff is entitled to recover, what amount of money will compensate him for his injuries? *A.* $625."

From a judgment entered on such verdict defendant appeals.

*Edward M. Smart,* for the appellant.

For the respondent there was a brief signed by *Minahan & Minahan,* and oral argument by *Victor I. Minahan.*

The following opinion was filed June 1, 1915:

BARNES, J. The running time of the train between Escanaba and Oconto was about three hours. The plaintiff was unable to state how long he was on the train before he received his injury, but thought he might have been hurt an hour and a half after he got on, or a half or three quarters of an hour before he got to Oconto. He did not change his seat and was sure that he did not fall asleep. He did not notice whether the grip was in the rack when he boarded the train. He did not see it until it fell on him, and did not observe any one put the grip in the rack while he was on the train. He testified that if it was so placed he might have observed that it was being placed there and he might not. There were quite a few passengers and also some vacant places in some of the seats. Plaintiff did not know how many persons got on and off at stations. He also testified that, when he said that no one to his knowledge placed the grip in the position it occupied after leaving Escanaba, what he meant was that he did not see any one put it there. Certain train employees testified that they made it a practice to observe whether parcels were so placed in the racks as to endanger passengers and that they did not observe the grip in question. The jury found lack of actual knowledge, but also found that in the exercise of ordinary

care the trainmen should have discovered and removed the grip.

It was incumbent on the plaintiff to show that the employees of the defendant did not exercise that degree of care for his safety that the law imposed on them.    In the present case it was necessary to show by a preponderance of the evidence that the grip was in the rack sufficiently long so that such employees in the exercise of such care should have discovered and removed it.    The plaintiff has not met this burden.    It is a matter of pure speculation how long the grip had been in the rack before it fell.    It is not a case where conflicting inferences might legitimately be drawn from the evidence. What the fact is, is a matter of conjecture pure and simple.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $10 costs, on October 5, 1915.