**COOPER v**
**CANNONBALL TRANSPORTATION CO**

Ohio Appeals, 2nd Dist, Franklin Co

No 2428. Decided April 4, 1935

Frank R. Redfern, Adelphi, and J. E. Todd, Columbus, for plaintiff in error.

Myron B. Gessaman, Columbus, and Blair & Blair, Portsmouth, for defendant in error.

## OPINION

By BARNES, J.

The motion for new trial and the petition in error set forth the following specifications of error:

"1. Said court erred in excluding evidence offered on the part of the plaintiff.

"2. Said court erred in its general instructions to the jury.

"3. The court erred in refusing to give instructions requested by the plaintiff at the close of the general charge.

"4. The verdict was contrary to the evidence and the manifest weight thereof and contrary to law."

Specifications 1, 2 and 3 are discussed separately and at length. Specification 4 is not discussed in the briefs and, we take it, is not urged as a ground of error except in connection with the other specifications.

Counsel for the respective parties have favored us with very able and comprehensive briefs.

It shall be our purpose to consider and determine the several grounds of error in the above order.

### FIRST GROUND
### "SAID COURT ERRED IN EXCLUDING EVIDENCE OFFERED ON THE PART OF THE PLAINTIFF."

This claimed ground of error is buttressed entirely upon one question propounded by counsel for plaintiff, in direct examination of witness Charles Arthur, he being the driver of the bus at the time of the accident. Mr. Arthur was called by the plaintiff as their witness.

It appears at page 106 of the bill of exceptions that the following question was asked:

"Question: I will ask you, Mr. Arthur, if it isn't a fact that other busses engaged in the transportation of passengers with these kind of carriers had not provided equipment to keep these suit cases from bouncing out of their containers?"

From the brief of counsel for plaintiff we learn that it was sought to establish a custom of maintaining equipment on or attached to the carrier, which was not attached on the carrier in the bus in which plaintiff was riding.

We think this claimed error is fully answered by an examination of the petition, wherein it is disclosed that no question is raised as to equipment.

"A special custom or usage in any particular trade, business or profession, to be available to either party, must be specially pleaded."

**Palmer v Humiston, 87 Oh St, 401, Syl. 3.**

"Where a particular local custom or acquiesced usage is relied upon as creating an obligation or duty owing to a party, evidence relating thereto is not admissible unless facts giving source to that duty are pleaded."

**C. C. C. & St. L. Ry. Co. v Potter, 113 Oh St, 591**, and page 597 of the opinion.

Even if the petition could be given a construction admitting evidence of custom, we still think that the question as framed would be improper, in that it is not clear that it calls for an answer of general or local custom.

We also cite **Volume 29, Ohio Jurisprudence (Negligence), §143.**

### GROUND TWO
### "SAID COURT ERRED IN ITS GENERAL INSTRUCTIONS TO THE JURY."

The determination of this alleged ground of error necessarily requires a very careful examination of the pleadings and the testimony as it appears in the record.

The following excerpts from plaintiff's petition contain the sole and only allegations of claimed acts of negligence:

"Plaintiff says that defendant was careless in this, to-wit, that it did not safely receive and carry the said plaintiff as a passenger for hire, but on the contrary, allowed and permitted baggage to be placed in an insecure and unsafe manner above her head in the bus, well knowing that the same was likely to be dislodged because of the insecurity of its location and the movements of the bus being operated over the highway, and that said suit case did fall by reason of the insecure manner in which the same was placed and the operation of the bus on the highway."

Only three witnesses were called to testify relative to the falling suit case. One was the plaintiff, another Mr. R. H. Rutland, a passenger on the bus at the time of the accident, and the third, Mr. Charles Arthur, the driver of the bus.

None of the witnesses have any recollection of having seen the suit case before it fell. There is an entire absence of evidence of who owned the suit case or who placed it in the carrier. Plaintiff was oblivious of its presence or that it was falling until it hit her, as she claims, on the shoulder and arm. The passenger witness, Mr. Rutland, first saw it as it was falling and made an effort to check its fall and divert its course, but was not in time to reach it.

The driver attracted by the commotion, parked the bus, went back to investigate, found the suit case in the aisle, picked it up and replaced it in the carrier. Thereafter he gave his attention to the plaintiff, taking her to a doctor at the next stop in the city of Waverly.

The carrier, according to the testimony, was constructed of solid steel, attached to the outer edge of the bus and extended inwardly towards the center, a distance of approximately 28 inches. Nearest to the aisle there was a steel edge, extending upwards about 3½ inches, this making the carrier about 3½ inches in depth. There were no compartments, and this steel carrier construction commenced at the front door and extended back the full length of the bus without any divisions. The driver of the bus testified that at times passengers would carry their own baggage, and at other times he would carry it in and

place it in the carrier. As heretofore indicated, there was no testimony as to this particular suit case. The same procedure followed in leaving the bus, that is, sometimes the passenger would procure and carry out his own baggage, but, if perchance, the passenger did not carry it out, then the driver would.

There was no evidence of any unusual manner or method in the operation of the bus. According to the testimony of Mr. Rutland, they were rounding a curve at the time the suit case fell. The only employee on the bus was the driver, and, of course, his location in the bus was in the driver's seat, except when stops were made to take on or let off passengers. This particular bus in addition to regular stations, would make stops at any place along the highway on signal. The evidence was very indefinite as to the number of passengers on the bus at the time of the accident, nor was there any evidence as to the number of stops made between Portsmouth and the scene of the accident. Inquiry was made of the driver, but he was unable to remember.

According to the testimony of the driver, he would take up tickets from the passengers getting on at stations after they were seated. His going through or inspecting the car or equipment would be limited to the casual observation that he might make in gathering up tickets.

The following portion of the general charge of the trial court is claimed to be erroneous:

"I charge you, members of the jury, that the evidence in this case fails to show that there was anything unusual as to the manner in which the suit case in question was placed in the rack; furthermore, there is no evidence to show that the defendant's agent knew of the suit case being situated in the rack insecurely, and there is no evidence furthermore, members of the jury, in the evidence, and, therefore, I call it to your attention because it is not for your consideration; there is no evidence in the case at the time in question of any unusual operation of the bus in question. I therefore charge you that the only issue of negligence which you are to consider in this case is whether or not there was negligence in the construction and maintenance of the rack in question, considering its dimensions, size and manner of construction in connection with the suit case, which is alleged to have fallen on the plaintiff from which she claims to have sustained the injuries, and if you find, members of the

jury, by a preponderance of the evidence, considering the character of the parcel which is alleged to have fallen on the plaintiff, that the defendant failed to exercise the highest practical degree of care in the construction and maintenance of said rack to make it reasonably safe for passengers, who are seated in the conveyance of the defendant, and that as a direct and proximate cause thereof the suit case fell and caused the injury to the plaintiff, it would be your duty to return a verdict for the plaintiff; also considering, members of the jury, in that connection, that the bus was being operated in the ordinary and usual manner * * * *."

We think that the court was in error in defining the issues wherein he says:

"I therefore charge you that the only issue of negligence which you are to consider in this case is whether or not there was negligence in the construction and maintenance of the rack in question, considering its dimensions, size and manner of construction in connection with the suit case, which is alleged to have fallen on the plaintiff," etc.

Our basis for this conclusion is we do not think that any language in the petition will permit of the construction that there was any claim made of negligence in construction and maintenance. What the plaintiff said in her petition was that the defendant allowed and permitted baggage to be placed in an insecure and unsafe manner. This language necessarily refers to the manner of placing the baggage in the carrier, rather than to any defect of construction or maintenance. The injection of this issue into the case, in view of the verdict, would not be prejudicial to the plaintiff, nor does counsel make such contention except as the charge limits to that one issue. Counsel contend that even though the trial court was correct in his statement to the jury that "there was no evidence to show that defendant's agent knew of the suit case being situated in the rack insecurely," yet the defendant would be liable for what its servant in charge of its bus, in the exercise of reasonable care, should have known.

As an abstract proposition of law, the observation of counsel is correct, but is it applicable under the undisputed evidence in this case? If the record presented evidence that the suit case was in an insecure or unsafe position in the carrier, then the next inquiry would be as to the length of time it rested in the carrier in an insecure and unsafe manner, in the absence

of evidence that defendant's employee so placed it. Under such a situation it would then be a jury question to determine whether or not the driver of the bus, in the exercise of ordinary care, should have ascertained and corrected. The record being entirely silent, the court can not supply the omitted testimony since it does not arise from any inference. Search the record as we may, we can not arrive at any satisfactory explanation as to why the suit case fell from the rack. If the suit case was placed in the carrier in a secure and safe manner and was dislodged therefrom by reason of defective construction or maintenance, then we are confronted with the situation that no such claim is made in the petition.

If, considered in conformity to the allegations in the petition that the suit case was placed in the carrier in an insecure and unsafe manner, we are again confronted with the fact that the passengers in the bus might place their baggage in the carrier or take it out at will.

We find no prejudicial error in the general charge of the court.

### GROUND THREE
"THE COURT ERRED IN REFUSING TO GIVE INSTRUCTIONS REQUESTED BY THE PLAINTIFF AT THE CLOSE OF THE GENERAL CHARGE."

This request in effect invoked the principle of res ipsa loquitor. We very frequently find this principle applicable in personal injury actions against common carriers. Such agencies are chargeable with the highest degree of care consistent with the practical operation of the instrumentalities employed by it in serving the public. This does not mean that a common carrier is a guarantor of the safety of its passengers.

"The doctrine of res ipsa loquitor asserts that whenever a thing which produces an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient or reasonable evidence to support a recovery, in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care."
**Volume 24, Ohio Jurisprudence, (Negligence), §153.**

The cases cited under note 3 of the above quotation adequately support the text,

"The maxim res ipsa loquitor relates merely to negligence prima facie and is available without excluding all other possibilities, but it does not apply where there is direct evidence as to the cause, or where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence."
29 Cyc. 624.

The above citation is quoted with approval in the case of Cleveland Railway Company v Souther'ard, 115 Oh St 262-264.
Also see 29 O. Jurisprudence (Negligence), §157.
"The doctrine of res ipsa loquitor applies only to those cases where it appears that the instrumentality which produced the injury is under the control and management of the defendant."

The writer of the text on the question of res ipsa loquitor, commencing at §153 to §162, inclusive, has a splendid dissertation on this subject and collects in the notes thereunder all of the Ohio cases.

Applying the principle of the instant case, we are unable to conclude that the doctrine of res ipsa loquitor applies. The suit case was not under the control and management of the defendant company, and therefore it is just as inferable that its falling was due to the negligent act of some other individual as to that of the company. The case of Cleveland Railway Company v Southerland, supra, is very much in point.

"When the passenger was injured by the fall of a suit case from the parcel rack which had been placed by another passenger, in such a position that the oscillation of the train was liable to cause it to fall as it did, and it had remained in the rack prior to the accident for a sufficient length of time to warrant a finding that the carrier's employees should have taken notice of its dangerous position, whether the carrier was negligent in not doing so and in failing to remove or cure it was for the jury."
Adams v L. & N. R. R. Co., 134 Ky., 620, 121 SW 419.

"In a passenger's action for injuries for being struck by a grip which fell from the rack where it had been so placed as to endanger passengers, the burden was on plaintiff, to prove that the grip was in the rack a sufficient length of time for defendant's employees in the exercise of ordinary

care, to have discovered and removed it."

Colburn v C. & N. W. Ry. Co., 161 Wis., 277. (152 NW 821).

We find no error in the court's refusal to charge the doctrine of res ipsa loquitor.

## GROUND FOUR
"THE VERDICT WAS CONTRARY TO THE EVIDENCE AND THE MANIFEST WEIGHT THEREOF AND CONTRARY TO LAW."

We find no error in the verdict of the jury.

In conclusion, we might say that the trial court should have confined the issues to the pleadings and sustained the motion of defendant for a directed verdict.

Finding no error in the cause prejudicial to plaintiff, the judgment of the lower court will be affirmed.

KUNKLE, PJ, and HORNBECK, J, concur.